### BAINTON v. CLARK EQUIPMENT CO.

1. DEEDS—"GRANT"—RESTRICTIONS.
   While the word "grant" under our statute is sufficient to pass a title in fee, its use in a conveyance may be restricted by the other language employed.

2. SAME—CONSTRUCTION—INTENT.
   In the construction of deeds or other contracts, the primary end to be attained is, if possible, to ascertain clearly the intention of the parties.

3. SAME—GRANT FOR STREET — EASEMENTS — MUNICIPAL CORPORATIONS.
   Where plaintiffs granted to a village certain land for street purposes, the interest acquired by the village was an easement for the benefit of the public, and not a title in fee which it could transfer by conveyance to a private corporation.

4. INJUNCTION—RIPARIAN RIGHTS—TRESPASS.
   Where defendant acquired no title to land in a conveyance from the village, it secured no riparian rights to the

waters in an adjacent creek, and the building by it of a pumping station thereon was a trespass which the owner of the fee had a right to have restrained.

5. SAME—TRESPASS—DAMAGES.

That defendant spent large sums in improving the land on which it was a trespasser, and in completing its pumping station thereon, largely after the injunction was dissolved and while plaintiffs were perfecting their appeal, cannot move this court to refuse plaintiffs the writ of injunction and award them damages for such interference with their property rights.

Appeal from Berrien; White (Charles E.), J. Submitted April 8, 1920. (Docket No. 20.) Decided June 7, 1920.

Bill by William F. Bainton and another against the Clark Equipment Company to enjoin a trespass. From a decree dismissing the bill, plaintiffs appeal. Reversed, and decree entered for plaintiffs.

*Gore & Harvey,* for plaintiffs.

*Frank M. Sanders, George W. Bridgman* and *McInernys, Yeagley & McVicker,* for defendant.

SHARPE, J. Portage street runs north and south in the village of Buchanan, in Berrien county. Second street, running east and west, terminated at Portage street in 1912. The plaintiffs, who are engaged in the milling business, have owned and operated a water power on McCoy's creek for many years. They owned much land on the east side of Portage street, including that which would be occupied by Second street if extended, and also the floodage rights over lands to the north and west thereof.

In December, 1911, the village council by resolution appointed a committee to confer with plaintiffs "in regard to opening Second street, from Portage street,

east." On April 12, 1912, by resolution of the council, such committee was "empowered to secure the right of way for the continuation of Second street across Bainton Bros.' property to the Buchanan Electric Steel Company's plant." On April 18, 1912, a conveyance (as claimed by defendant), or contract (as claimed by plaintiffs) was entered into by the plaintiffs as first parties and the village as second party. We quote therefrom:

"Whereas, the parties of the first part are the owners of certain real estate within the corporate limits of the village of Buchanan, and also own the water power from a creek therein, known as McCoy's creek, and,

"Whereas, the party of the second part desires to open and construct and maintain a street or way over and across certain of said lands not platted into lots, and which constitute a part of the land held by the parties of the first part as flowage lands, and with which said village does not intend to interfere, which will require a change in the course of the said McCoy's creek, and will also require the constructing of a bridge over the same in the said street;

"Now, therefore, this indenture witnesseth; that for and in consideration of the sum of three hundred and twenty-five ($325.00) dollars to the parties of the first part in hand paid by the party of the second part, the receipt whereof is hereby confessed and acknowledged, and also in consideration of the undertakings and covenants of the party of the second part hereinafter contained, the parties of the first part do hereby grant to the party of the second part the following described property subject to the terms and provisions hereof, and for the uses and purposes aforesaid, to wit:"

This was followed by a description of the land, the same being that required to extend Second street easterly across plaintiffs' lands, the paragraph concluding, "the same to be used as street or highway and for no other purposes." Then followed a covenant on

the part of the plaintiffs to change the course of McCoy's creek where it would cross Second street, the village agreeing to erect a suitable bridge to permit the free passage of the waters thereunder and subject to the right of the plaintiffs to increase the height of their dam without incurring liability therefor, "it being understood that the highway shall be so erected as to permit such improvement of said water power." Plaintiffs were also relieved from at any time being required to construct sidewalks along Second street. This instrument was not recorded until May 26, 1919.

The Celfor Tool Company, in 1912, was operating a plant upon land it owned adjoining the plaintiffs on the east. The village of Buchanan, treating the written instrument above referred to as a conveyance to it of the fee in the lands described therein, on the 20th day of August, 1913, executed a warranty deed of it to the Celfor Tool Company for a stated consideration of one dollar. This deed contained the following provision.

"Said lands are to be taken by second party subject to a contract made and entered into between William F. Bainton and Charles L. Bainton and the village of Buchanan on the 18th day of April, 1912, and said lands conveyed by Baintons under said contract to said village of Buchanan are to be used as a street or highway and for no other purpose."

This instrument was recorded on May 18, 1914.

On December 26, 1916, the tool company, by unconditional warranty deed, for a stated consideration of one dollar, conveyed the lands in question to the defendant company, which had been operating a plant on adjoining lands. This deed was recorded on December 28, 1916. Soon after the defendant received its deed, it laid out and improved the extension of Second street east over the lands in question. A pavement, not, however, covering the entire width of the

street, was constructed in 1916, with a cement sidewalk along the northerly side thereof.

In the spring of 1919, the defendant company began work on this street for the purpose of constructing a pumping station thereon. The purpose was to run the water from McCoy's creek, which here flows in a northerly direction, into a concrete box 8 feet by 4 feet and 4½ feet deep, the bottom of which would be about 12½ feet below the surface of Second street. The top of this box would be less than 2 feet above the bed of the stream. This box was being constructed at the south end of the culvert over McCoy's creek where it crosses Second street and 30 feet west of the line between plaintiffs' and defendant's lands, from which a 20-inch tile would lead to a pumping station to be erected just over the line and in the street fronting on defendant's property. The defendant claims that it had theretofore been engaged in manufacturing war material for the government and had been requested to provide more suitable fire protection. It had been securing the water for such purpose from the village, and its purpose was only to use the water from the creek through its pumping station in cases of emergency.

On the attention of one of the plaintiffs being called to the work then in progress, he interviewed Mr. Burrows, one of defendant's vice-presidents, concerning it and protested against defendant so occupying the public street. A later conference was had, at which both of the plaintiffs were present, when Mr. Burrows explained the plan of their work fully to them, including the location and size of the pumping station. On defendant's refusing to discontinue the work, plaintiffs filed the bill of complaint herein, praying that defendant "be permanently enjoined from further connecting their factory through Second street by means of water mains, or otherwise, with the waters

in McCoy's creek, and be enjoined from diverting the waters in said creek to the premises of said defendant," and also that defendant be required to remove the building material placed on the street, and commanded to fill the excavation made by it "so as not to interfere with the use and enjoyment by plaintiffs of their said property."

The defendant, answering, set up the conveyance above referred to, alleging that Second street as extended is a private driveway, owned exclusively by it as a way of ingress to and egress from its plant, the entire expense of constructing which has been paid by it; that the lands now claimed to be a street were never dedicated to or acquired by the public as such; that its contemplated use of the water of McCoy's creek is for fire purposes in case of emergency only, and such use will not in any way interfere with that now made by plaintiffs of such waters.

The proofs were taken in open court. After a full hearing, the trial judge made a decree dismissing plaintiffs' bill. We are not informed by any finding as to his reason for so doing. There is, however, so little conflict in the testimony that his opinion as to the weight to be given to that offered by the respective parties would aid us but little.

1. What rights passed to the village under the deed from plaintiffs of April 18, 1912? The plaintiffs claim that but an easement was conveyed and that "The village of Buchanan holds this easement in trust for the public. They hold it for no other purpose." The defendant claims that:

"The instrument termed 'contract' by appellant, constitutes a deed of conveyance, conveying the fee, and appellee is vested with the fee of the soil.

"The realty is being used for street purposes and there has been no violation of any of the covenants, warranties or conditions of the conveyance."

While the word "grant" under our statute is sufficient to pass a title in fee, its use in a conveyance may be restricted by the other language employed. As was said by Mr. Justice BROOKE in *Putnam* v. *Railroad Co.,* 174 Mich. 246:

"In the construction of deeds or other contracts, the primary end to be attained is, if possible, to ascertain clearly the intention of the parties."

In that case, the authorities are collected and reviewed, and need not be here cited or referred to.

Applying this rule of construction, we find no difficulty in determining the effect to be given to this instrument. The intent of the parties thereto is apparent from its terms. Even if doubt existed, it should be quickly dispelled when reading the proceedings of the village council which led up to its execution. The village wanted this land for a street, and the plaintiffs conveyed it to be used for that purpose and for that alone. In, effect, the instrument reads:

"The parties of the first part do hereby grant to the party of the second part the following described property for the use and purpose of opening, constructing and maintaining a street thereon."

The interest acquired by the village was an easement for the benefit of the public, and not a title in fee. It obtained no such title as could be transferred by it, and none passed by its conveyance to the tool company. 2 Tiffany, Real Property (2d Ed.), § 486. The language of Chief Justice Shaw in *Harback* v. *City of Boston,* 10 Cush. (Mass.) 295, quoted approvingly in *Munro* v. *Meech,* 94 Mich. 596, is pertinent:

"The general rule is that the right of the public or of individuals to the use of the land of others, for a precise and definite purpose, not inconsistent with a general right of property in the owner of the soil, is, in contemplation of law, an easement or franchise, and not a right of property in the soil, even though it

deprive the owner for the time being of all useful or beneficial interest in the land."

We have, then, this strip of land owned by the plaintiffs, on which the village, by an easement acquired by it, has the right to construct and maintain a public street. To such a use it has not been subjected. The defendant has no rights therein. Having no title to the land, it secured no riparian rights to the waters in McCoy's creek. The work begun by it when the bill was filed was a trespass and one which the plaintiffs as the owners of the servient estate had a right to object to and, if persisted in, have restrained by injunction. *Ryan* v. *Brown*, 18 Mich. 196; *Stone* v. *Lumber Co.*, 59 Mich. 24; *Clay* v. *City of Grand Rapids*, 60 Mich. 451; *Vanderlip* v. *City of Grand Rapids*, 73 Mich. 522.

The defendant has expended large sums in improving this land as a private way and in completing its pumping station. The latter expenditure was largely made after the injunction was dissolved and while plaintiffs were perfecting their appeal to this court. While regrettable, this cannot move us to refuse plaintiffs the relief asked for and attempt to award them damages for such interference with their property rights. *Ives* v. *Edison*, 124 Mich. 402 (50 L. R. A. 134) ; *Tolsma* v. *Scripps Corporation*, 153 Mich. 14; 22 Cyc. p. 765. The work done on the street can probably be saved by appropriate action of the village council. The cement box can be filled up without its removal, and the tile laid would seem to be no interference with the use of the land for any purpose if it be disconnected with the pumping station erected by defendants.

A decree may be prepared in conformity with this opinion, with costs to plaintiffs.

MOORE, C. J., and STEERE, BROOKE, FELLOWS, STONE, CLARK, and BIRD, JJ., concurred.