Bessie BROWN et al., Plaintiffs,

v.

Charles W. BATES et al., Defendants.

Civ. No. C 72–217.

United States District Court,
N. D. Ohio, W. D.

Sept. 21, 1973.

James M. Klein, Thomas E. Willging, Toledo, Ohio, for plaintiffs.

Kevin Duffey, Columbus, Ohio, for defendants.

## OPINION

DON J. YOUNG, District Judge:

This cause came to be heard upon motion of the plaintiffs for summary judgment and upon cross motion of the defendants for summary judgment, both pursuant to Rule 56, Fed.R.Civ.P. The parties state to the Court that there is no genuine issue as to any material fact and the Court finds the case in the proper posture for ruling under the provisions of Rule 56. Counsel on both sides have ably represented their clients' positions.

This is a case of first impression which has evolved from the following fact situation. Plaintiffs, in this class action,[1] are recipients of aid from what is commonly referred to as "categorical public assistance programs" of the Social Security Act (Old Age Assistance [OAA], 42 U.S.C. §§ 301–306; Aid to the Blind [AB], 42 U.S.C. §§ 1201–1206; Aid to Families with Dependent Children [AFDC], 42 U.S.C. §§ 601–610; and Aid to the Permanently and Totally Disabled [APTD], 42 U.S.C. §§ 1351–1355), who also attend college on a full time basis, and participate in the Federal Work Study Program, 42 U.S.C. § 2751 et seq.

The categorical assistance programs are funded by the federal and state governments on a matching basis and are administered by the state, subject to federal laws and regulations. The Work-Study Program is funded directly by the federal government, and is administered, on a local level, by the colleges and universities which participate in the program.

1. The class is defined as:
all students who are employed under the Work Study Program pursuant to the Economic Opportunity Act of 1964, as amended, 42 U.S.C. §§ 2751–2756, and who also are recipients of benefits under the federal-state categorical public assistance programs pursuant to the Social Security Act of 1935, as amended (namely, Old Age Assistance, 42 U.S.C. §§ 301–306, Aid to the Blind, 42 U.S.C. §§ 1201–1206, Aid to Families with Dependent Children, 42 U.S.C. §§ 601–610 and Aid to the Permanently and Totally Disabled, 42 U.S.C. §§ 1351–1355).

The plaintiffs seek to enjoin the Ohio Department of Public Welfare from treating monies received by categorical assistance recipients under the Work-Study Program as available income, and thereby reducing the recipients' monthly grants from the categorical assistance programs.

## I.

Congress has provided, in pertinent part, that:

A state plan for aid and services to needy families . . . (7) except as may otherwise be provided in clause (8), provide that the State agency shall, in determining need, take into consideration any other income and resources of any child or relative claiming aid to families with dependent children . . . . 42 U.S.C. § 602(a)(7)[2]

The Federal Regulations, 45 C.F.R. § 233.20 et seq., in giving guidance in implementing the provisions of the categorical assistance programs provide in pertinent part:[3]

*Requirements for State Plans.* A State Plan for OAA, AFDC, AB, APTD or AABD must, as specified below:

(1) *General.* Provide that the determination of need and amount of assistance for all applicants and recipients will be made on an objective and equitable basis and all types of income will be taken into consideration in the same way, except where otherwise specifically authorized by Federal statute. . . .

(3)(ii) Provide that, in establishing financial eligibility and the amount of the assistance payment: . . . (c) only such net income as is actually available for current use on a regular basis will be considered and only currently available resources will be considered . . . .

(3)(iv) Provide that, in determining the availability of income and resources, the following will not be included as income: . . . (b) loans and grants, such as scholarships, obtained and used under conditions that preclude their use for current living costs. . . .

The Ohio Department of Public Welfare has interpreted Section 405[4] of Ohio Public Assistance Manual to include funds received by participation in the Federal Work-Study Program and has in essence declared the funds to be "available income" which must be taken into consideration in determining the amount of assistance to be granted recipients of categorical assistance programs. 45 C. F.R. § 233.20(a)(1). Plaintiffs seek to enjoin the Ohio Department of Public Welfare from treating the Work-Study monies as available income.

2. *See also* 42 U.S.C. § 1202(a)(8); 42 U.S. C. § 1352(a)(8); 42 U.S.C. § 302(a)(10).

3. The Secretaries of Treasury, Labor, and Health, Education & Welfare have been granted authority to "publish such rules and regulations, not inconsistent with this [statute], as may be necessary for efficient administration." 42 U.S.C. § 1302.

4. Section 405 of the Ohio Public Assistance Manual states:
*Available Income Defined.* Available income is defined as a resource in cash or kind that is regularly received and at hand for current use. To be considered in determining need, income must be available to the client in meeting current need on a regular basis. For example: potential income is not available to meet current need until it is developed. Income that was once being received by the client but has stopped is not available, and only the portion of income after appropriate deductions and "disregard" is to be considered in determining the amount of available income to be applied to state standards in order to arrive at the amount of the assistance payment.
It should be noted that the Ohio Public Assistance Manual also has a provision similar to 45 C.F.R. § 233.20(a)(3)(iv)(b) which states:
*Undergraduate Student Grants or Loans.* Any grant or loan to any undergraduate student for educational purposes made or insured under any program administered by the U. S. Commissioner of Education, is not to be considered in determining need. Section 444.

## II.

■ The Court is first faced with determining whether the monies received under the Work-Study Program are a grant under the provisions of 45 C.F.R. § 233.20(a)(3)(iv)(b). The term "grant"[5] does not lend itself to a precise definition that can be applied in all situations. Rather its meaning is to be determined from its connection and the manner of its use. Bainton v. Clark Equipment Co., 210 Mich. 602, 178 N.W. 51 (1920). The Court, therefore, must look to the purpose of the Work-Study Program and how the program is administered to determine if it meets the provisions of 45 C.F.R. § 233.20(a)(3)(iv)(b).

The Work-Study Program is merely one part of a more general program[6] that Congress has established to provide financial assistance to needy students who desire to obtain higher education. Selection of students to participate in the Work-Study Program, which provides employment for those selected, is distinct from employment generally. The individual selected must maintain his status as a student at an eligible institution, 42 U.S.C. § 2754; the student must meet the financial eligibility requirements of demonstrating that he is in need of the earnings from such employment in order to pursue a course of study at such institution, *Id.* at § 2754(a)(3)(1); his wages are paid up to eighty percent (80%) by the federal government, *Id.* at § 2754(a)(6); and the institutions participating in the program must make the program reasonably available to all eligible students, *Id.* at § 2754(a)(7).

The differences between employment under the Work-Study Program and employment in general leads the Court to believe that first, student participation in the program is brought about by qualifying under financial requirements established by the federal government to earn wages paid from funds which are provided, up to eighty percent (80%), by the federal government. Second, and equally important, the participants in the program must maintain student status and the funds, as stated by Congress, "shall be furnished only to a student who is in need of the earnings from such employment in order to pursue a course of study at [an] institution," 42 U.S.C. § 2754(a)(3)(1). This precludes the use of the funds for current living costs since the recipient must be a student and also show that he needs the funds to continue his education. The Court, based upon the language of the statute, cannot find that the monies earned are for current living costs but rather for the extraordinary costs of being a student. Therefore, on the basis of the money earned being heavily subsidized by federal grants and that the recipients of the monies must maintain the unique status of student and apply the monies toward their education, the Court comes to the conclusion that the Work-Study Program is a grant within the meaning of 45 C.F.R. § 233.20(a)(3)(iv)(b).

### III.

The Court will now focus on 45 C.F.R. § 233.20(a)(3)(ii)(c) which states:

Provided that, in establishing financial eligibility and the amount of assistance payment: . . . only such

---

5. See Webster's Third New International Dictionary 989 (1966); Black's Law Dictionary 829 (4th ed. 1968).

Two courts which were faced with defining "grant", their fact situations being distinguishable from the case presently before this Court, have given the term a broad definition. Palmer v. United States Civil Service Commission, 191 F.Supp. 495 (S.D.Ill.1961), rev'd on other grounds, 297 F.2d 450 (7th Cir.) cert. denied, 369 U.S. 849, 82 S.Ct. 932, 8 L.Ed.2d 8 (1962); Englehardt v. United States Civil Service Commission, 197 F.Supp. 806 (M.D.Ala.1961), aff'd per curiam, 304 F.2d 882 (5th Cir. 1962).

6. The other major programs are the Educational Opportunity Grants and the National Defense Student Loans.

net income as is actually available for current use on a regular basis will be considered, and only currently available resources will be considered.

The defendants argue that the language of the Regulation is clear and if the Court prohibits the Ohio Department of Public Welfare from excluding the monies from the Work-Study Program as available income, the Court is legislating rather than interpreting. The defendants further buttress their argument by citing Daniels ·v. Thompson, 269 A.2d 437 (1970) in which the District of Columbia Court of Appeals held that the funds received under the "Stay-in-School" program could not be excluded as available income in determining the amount entitled to under AFDC grants, 42 U.S.C. § 602.

Plaintiffs, in response to the defendants' second argument, contend that the case is inapposite since the *Daniels* Court was not faced with the issue of determining Congressional intent under the Work-Study Program. This Court agrees that the legal issues between the instant case and the *Daniels* case are dissimilar and further, this Court does not choose to follow the reasoning of the *Daniels* Court on issues that are similar.

In returning to defendants' first argument, the Court disagrees with the defendants' contention. The Court is not legislating but rather interpreting the Federal Regulations in the light of the Congressional purpose in enacting the categorical assistance program and the Work-Study Program. It seems clear that the categorical assistance programs were enacted to provide "aid and services to the needy", 42 U.S.C. § 602. Income earned while receiving funds under these programs is disregarded to a certain extent based upon a formula provided in the Code of Federal Regulations [7] and the remaining income is "available income" to be taken into consideration in calculating the extent of

assistance a recipient is entitled to.[8] The Work-Study Program, on the other hand, was enacted by Congress to provide funds, obtained through employment with private non-profit or public institutions, for needy students who desire higher education.[9] Basically, its purpose is to equip the needy with the education and training that will enable them ultimately to meet their needs by their own efforts, rather than depending upon governmental largesse.

The Court believes that the available income Congress intended to be included in determining the amount of assistance a recipient was to receive is income earned in permanent employment situations and for static needs, such as food, clothing and shelter. The monies earned by participating in the Work-Study Program do not qualify under either criteria. The participant must maintain student status to be eligible for the program and even in this day of protracted higher education programs one cannot consider employment based on student status as permanent. Further, although the statute does not specifically prohibit the funds for use other than for strictly educational purposes (i. e., books and tuition), the statute does declare that "employment under such work-study program shall be furnished only to a student who is in need of the earnings from such employment in order to pursue a course of study at [an] institution." 42 U.S.C. § 2754(a)(3). This Congressional mandate constrains the Court to view the funds earned by participation in the Work-Study Program for the particular purpose of obtaining an education. Therefore the Court cannot find that the monies earned are on "a regular basis" and "actually available for current use."

### IV.

Based upon the Court's interpretation of either 45 C.F.R. § 233.-

---

7. *See* 45 C.F.R. § 233.20(a)(4)–(a)(11).

8. 45 C.F.R. § 233.20(a)(1).

9. H.R.Rep.No.554, 92d Cong. 2d Sess., 1972 U.S.Code Cong. & Admin.News at 2480.

20(a)(3)(iv)(b) or 45 C.F.R. § 233.-20(a)(3)(ii)(c), these regulations promulgated by the Department of Health, Education and Welfare conflict with Section 405 of the Ohio Public Assistance Manual as interpreted by the Ohio Department of Public Welfare. It has long been held that a regulation by a department of the government addressed to and adapted to the enforcement of an act of Congress, the administration of which is confided to such department, has the force and effect of law.[10] Further, one of the pillars of our republican form of government, built upon the Supremacy Clause of the United States Constitution[11] and first enunciated by the United States Supreme Court in McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579 (1819), is that when state and federal law conflict the state law must fall. Therefore, since the federal regulation in question carries the force of law and conflicts with the state regulation as interpreted by the Ohio Department of Public Welfare, the state regulation, or the departmental interpretation thereof, cannot stand in the face of the federal regulations.

### V.

The Court does not believe the interpretations it has given above foreshadows an equal protection violation[12] between participants of the Work-Study Program and categorical assistance recipients who are employed otherwise. The Work-Study Program is a unique employment situation which the federal government has become immersed both as a regulator and subsidizer. The Court believes because of this, as explained in the reasoning above, the

funds earned cannot be considered available income. The Court must leave to Congress the decision whether excluded income is to be expanded in the categorical assistance programs to incorporate funds earned by students other than through participation in the Work-Study Program.

### VI.

The welfare system in this country has come under attack from almost every corner. The Court, bound by the limitations of this opinion, will not defend nor attack the system as it presently operates. But the Court does believe that the purpose of the Work-Study Program as enacted by Congress is to provide finances, through employment, for needy students who desire an education. If the money gained by participation in the Work-Study Program is then used to further decrease grants under other federal assistance programs, the incentive of the Work-Study Program is greatly diminished. Congress, through the Work-Study Program, has attempted to provide a vehicle for the indigent to use to escape the poverty cycle. If the money earned by the participants in the Work-Study Program is applied against other assistance programs, that vehicle's utility is much weakened, and in many cases totally destroyed. The Court does not believe Congress chose by enactment of the Work-Study Program to draw the cycle of poverty tighter, but rather was attempting to break its bonds upon untrained poor. The Court will not allow the defendants to defeat this beneficient purpose by their own interpretation of the law, especially when that interpretation, however faithful it may be to the

---

10. Rosen v. United States, 245 U.S. 467, 38 S.Ct. 148, 62 L.Ed. 406 (1918); Whattoff v. United States, 355 F.2d 473 (8th Cir. 1966); United States v. Ansani, 240 F.2d 216 (7th Cir. 1957); State ex rel. Cox v. Industrial Commission of Ohio, 144 N.E.2d 117 (Ohio App.1956).

11. U.S.Const. art. VI, § 2.

12. Plaintiffs raise an equal protection argument in their behalf but the Court will not

reach it since the Court has resolved the issue on the basis of statutory interpretation following the guidelines of Townsend v. Swank, 404 U.S. 282, 291, 92 S.Ct. 502, 508, 30 L.Ed.2d 448 (1971) in which the Court stated:

"[a]ny doubt must be resolved in favor of this construction to avoid the necessity of passing upon the equal protection issue."

letter of the law, totally defeats the spirit of the law, and serves only a sterile administrative purpose.

The Court will overrule the motion of the defendants for summary judgment and grant the motion of the plaintiffs for summary judgment, and an order will be entered accordingly.