In the Matter of DONA TAVAREZ et al., on Behalf of Themselves and All Other Persons Similarly Situated, Respondents, v GEORGE G. SIPPRELL, as Commissioner of the Erie County Department of Social Services, et al., Appellants.

In the Matter of RUBY FERGUSON, Respondent, and LORRAINE LINDSEY et al., Respondents-Intervenors, v GEORGE G. SIPPRELL, as Commissioner of the Erie County Department of Social Services, et al., Appellants.

Fourth Department, May 26, 1978

**APPEARANCES OF COUNSEL**

*Louis J. Lefkowitz, Attorney-General (Elaine L. Weiss, Jean M. Coon* and *Michael G. Wolfgang* of counsel), for Abe Lavine, appellant.

*Thaddeus J. Szymanski (John Barone* of counsel), for George G. Sipprell, appellant.

*George L. Cownie* for respondents and respondents-intervenors.

## OPINION OF THE COURT

DENMAN, J.

Petitioners in both actions are recipients of Aid to Families with Dependent Children (AFDC) as well as recipients of various educational grants from the Federal and State Governments. The question presented is whether the amounts by which such educational grants exceed the actual costs of education and education-related expenses may be considered by social service agencies as an available resource in determining need for assistance under the AFDC program. We hold that such excess grant funds may be used to offset AFDC assistance.

In Matter of Tavarez v Sipprell petitioners are recipients of New York State Educational Opportunity Program (EOP) grants in conjunction with their enrollment at the State University of New York at Buffalo. Petitioner Tavarez is also the recipient of a Federally funded basic Educational Opportunity Grant (BEOG). The Erie County Department of Social Services (hereinafter the Agency) determined that petitioners' educational grants, excluding only an amount attributable to school fees, were available income to be budgeted against their AFDC grants. After fair hearings, the New York State Department of Social Services (the Department) confirmed the Agency determinations that petitioners had received overgrants of assistance and notified petitioners that their AFDC grants would be discontinued to provide for recoupment of overpayment.

Petitioners instituted an article 78 proceeding as a class action in Special Term, arguing that the Agency may not consider Federal educational grants for any purpose and may consider State grants as an available resource only to the extent that the State grants exceed the amount necessary for bona fide education-related expenses, viz., child care, transportation, lunch money, fees, books and materials. Petitioner Dorn also claimed the cost of extracurricular activities as a legitimate educational expense. Petitioners conceded that if State grants alone exceeded educational expenses, AFDC grants *could be* reduced to the extent of the excess.

Special Term agreed with petitioners, holding that Federal educational grants must be totally excluded from computation

of petitioners' resources; that the Agency must allow verified education-related expenses such as those enumerated to be compensated by grant funds; and that after deducting such expenses, the Agency could then look to any excess as an available resource for the purpose of reducing the AFDC grant. It held further that the Agency's discontinuance of present AFDC grants to recoup past overpayments was improper in that it failed to take into consideration petitioners' present available income. The Agency and the Department appeal from that determination.

In *Matter of Ferguson v Sipprell* (91 Misc 2d 281) petitioner and her four children are AFDC recipients. During the 1974-1975 school year petitioner was a full-time college student and received a Tuition Assistance Program (TAP) grant, an EOP grant, and a BEOG grant. The Agency determined that petitioner's grant funds were in excess of her verified educational expenses and reduced her monthly assistance accordingly. Following a fair hearing the Department affirmed the Agency's determination.

Petitioner then commenced this article 78 proceeding. The motion of Lorraine Lindsey, Annie Green, Mianna Battle, Catherine Hundley and Barbara Chambers to intervene was granted. Intervenors are all recipients of public assistance. Green, Hundley and Battle, like petitioner Ferguson, receive TAP, EOP and BEOG grants; Chambers receives TAP, EOP and BEOG grants as well as a Rosary Hill College award and a National Defense Student Loan (NDSL); Lindsey is not herself a college student, but her son receives TAP, EOP and BEOG grants. Special Term held that the Agency must completely disregard petitioners' Federal grants and loans as available resorces in determining their need for public assistance. The Agency and the Department appeal from that determination.

The Agency and the Department argue that under the mandate of section 602 (subd [a], par [7]) of title 42 of the United States Code, they are required to examine all income and resources in order to determine a recipient's needs for AFDC. They also rely on 18 NYCRR 352.16, which provides, in pertinent part:

"Exemption of income and resources—general policy.

"(a) All income and resources of an applicant for or recipient of ADC or HR shall be considered in order to determine its availability; such income and resources shall be reasonably

evaluated; and, when determined to be available * * * shall be applied towards meeting the needs of an individual and his dependents * * *

"(b) When the terms of an award, [or] the legislative intent of a government benefit * * * limits the use of cash income, the social services official shall abide by such restriction, when verified. The restriction may limit the use of the income to a specified purpose or to a particular member or members of the household." Respondents contend that only a government grant[1] which is restricted in use is exempt from consideration and since no such restriction is placed on the funds awarded petitioners here, such funds may be considered in determining need and levels of assistance.

Petitioners contend, however, that respondents are prohibited from considering in any way *any* Federal grant or loan made or insured under programs administered by the United States Commissioner of Education, and further contend that State grants may be considered only to the extent that they are not necessary for educational purposes. They rely on regulations set forth at 45 CFR 233.20 (a) (3) (iv) (b) which provides, in pertinent part: "in determining the availability of income and resources, the following will not be included as income: * * * (b) loans and grants, such as scholarships obtained and used under conditions that preclude their use for current living costs" and 45 CFR 233.20 (a) (4) (ii) (d) which provides, in pertinent part: "in determining eligibility for public assistance and the amount of the assistance payment, the following will be disregarded as income and resources: * * * (d) [a]ny grant or loan to any undergraduate student for educational purposes made or insured under any program administered by the Commissioner of Education."

A virtually identical argument was rejected by a three-Judge court in *Richman v Juras* (393 F Supp 349), involving the same Federal regulations relied on by the parties here. Petitioners there were also AFDC recipients as well as recipients of various Federal and State (Oregon) educational grants. In interpreting the meaning of 45 CFR 233.20 (a) (3) (iv) (b) and (a) (4) (ii) (d), the court reviewed the legislative history of the amendment of section 1382a (subd [b], par [7]) of title 42 of

1. Respondents do not argue that private grants, such as the Rosary Hill College award to Barbara Chambers in Matter of Ferguson, should be considered as an available resource.

the United States Code,[2] the basis of the regulations, and concluded that Congress exempted from consideration as income "only scholarship and loan funds actually used to pay tuition and fees." *(Richman v Juras, supra,* p 351.) The legislative history (Public Law 92-603; Social Security Amdts of 1972, US Code, Cong & Admin News, 1972, vol 3, p 4989) defined the interrelationship between available income and educational grants, defining income as excluding only "the tuition part of scholarships and fellowships" *(id.,* at p 5019). The specific intent expressed is that "the bill would exclude from consideration as income any portion of a grant, scholarship, or fellowship received for use in paying the costs of tuition and fees at any educational institution. *Any portion of such payments which are intended for general living expenses, however, would be included as unearned income" (id.,* at p 5164; emphasis added). Based on that interpretation, the court went on to find that "no regulation requires the state to pretend that these federal monies are not also used to pay tuition and fees. The state may not violate regulation 233.20 (a) (3) (IV) (b) by ignoring as income state loans and scholarships which are available to be used in meeting current living expenses." *(Richman v Juras, supra,* p 351.)

It seems clear that the exemption is directed only at that portion of a Federal educational grant which is used to pay tuition costs and fees in order to insure that the social services agencies do not attempt to consider those funds as available resources offsetting a living cost grant. Examination of the many cross-references between the applicable Federal and State social service regulations and the Federal and State educational grant regulations indicates an over-all scheme and common purpose, namely, to provide needy families with dependent children with a decent way of life while at the same time enabling the parents to obtain an education in order to become self-supporting. Those provisions which prohibit consideration of educational grants as income do so to prevent the Social Services Department from taking away with one hand what has been given with another. That is, it is

2. "§ 1382a. Income; definition of earned and unearned income; exclusions from income.

"(b) In determining the income of an individual (and his eligible spouse) there shall be excluded—

"(7) any portion of any grant, scholarship, or fellowship received for use in paying the cost of tuition and fees at any educational (including technical or vocational education) institution".

clearly intended that eligible persons receive two different types of assistance: (1) assistance for living costs, and (2) assistance for educational costs and education-related expenses. It is not intended, however, for the recipients to receive a "windfall" by means of acquiring so many educational grants that there is an excess above the actual costs of getting an education. It is to this excess that respondents should be allowed to turn in order to determine the actual living cost needs of AFDC recipients.

■ The Third Department recently held that BEOG and other grants can be taken into consideration by the Agency in determining whether other educational loans, grants and scholarships not administered by the United States Commissioner of Education can be treated as available income in determining AFDC benefits (Matter of Lumpkin v Department of Social Servs. of State of N. Y., 59 AD2d 485, 490). We believe that view is sound and should be applied in the case before us. Applying the statutory and regulatory provisions in this manner does not pervert the intent of either program, namely to bring recipients to a position of self-support and self-care. If properly applied, it should advance that cause. What will be prevented, however, is the unintended "windfall" which could result from permitting a recipient to receive a number of educational grants, in excess of actual educational expenses, yet refusing to allow the social service agencies to reduce a living cost grant accordingly. This problem could be best alleviated by a more careful monitoring by the Department of Education of the number of grants conferred on one individual. In the absence of such monitoring, however, it is incumbent upon the courts to assure that these programs are being administered wisely and sparingly and that the legislative intent is being fulfilled.

■ We therefore hold that social services agencies may take into consideration Federal educational grants to AFDC recipients for the purpose of determining funds available for education and education-related expenditures. They may then look to State educational grants to determine availability of funds for remaining education expenses. The issue as to whether that portion of a Federal grant which exceeds the total sum required for education and related expenses, as defined herein, may be treated as an available resource by the Department is not presented here and thus is not reached.

■ In Matter of Ferguson Special Term found that TAP

awards cannot be considered available income since such awards are paid directly to the college for tuition and are, therefore, restricted income within the meaning of 18 NYCRR 352.16 (c) (1). That argument was specifically rejected in *Matter of Lumpkin* (59 AD2d 485, 491, *supra*). If a TAP grant is actually used for tuition, it is restricted and not available income (18 NYCRR 352.16 [c]); however, if a portion of the TAP grant is not used for tuition and is actually paid to the recipient, it may be considered as available income.

■ ■ We agree with Special Term that grant recipients should be allowed to establish legitimate and necessary education-related expenses such as fees, transportation, child care, books and materials, which are now set forth in 18 NYCRR 352.16 (c) (1). Extracurricular activities and costs of meals, however, should be considered as current living expenses. If it is determined after such computation that there are additional funds remaining in State educational grants which are not necessary for educational expenses, those funds may be used as available resources to offset AFDC grants. We also agree with Special Term that any recoupment which is dictated by the Agency findings must take into account petitioners' present available resources.

We do not believe that this determination is in conflict with the holdings in *Elam v Hanson* (384 F Supp 549) and *Brown v Bates* (363 F Supp 897). In those cases recipients of public assistance sought to enjoin the Ohio Department of Public Welfare from considering as available income funds received from Federal educational assistance programs (in *Brown,* a work-study program, and in *Elam,* Old Age, Survivors and Disability Insurance—OASDI). The District Court held that the Agency could not consider the educational grants as an available resource; however, the reason stated in each case was that the money forthcoming under those programs was restricted in its use to that necessary for obtaining an education. In *Brown* the court found that under the work-study program the money furnished could not be used for current living costs but was rather to compensate for the extraordinary costs of being a student. In *Elam* the court found that the OASDI funds were similar to the funds received under the Federal work-study program in *Brown* and designed to meet the cost of getting an education. Under both programs, therefore, those funds would be unavailable for current living costs because they were limited to educational costs. The court went

on to find, as we do today, that Federal legislation providing for public assistance and educational assistance is designed to aid recipients who desire an education by helping them to maintain a decent standard of living while pursuing a course leading to self-help and self-maintenance. Our decision is, we believe, consistent with that purpose.

▉ Petitioners in Matter of Tavarez brought this action under the former class action provision, CPLR 1005, purporting to represent "all other applicants for or recipients of public assistance in Erie County who receive grants, loans or scholarships to enable them to attend an educational institution".[3] Relying on *Ray v Marine Midland Grace Trust Co.* (35 NY2d 147), Special Term found that a class action would lie. A class action here is precluded under the guidelines set forth in *Matter of Martin v Lavine* (39 NY2d 72). Petitioners in that action were recipients of both Medicaid under State law and OASDI benefits under the Social Security Act. The question presented there was similar to that in the case at bar, i.e., whether recipients of "medical assistance only" under the State plan were entitled to the "disregard" provisions of the Federal law in determining eligibility. The court stated (p 75) that: "[W]e think that there is no compelling need to grant class action relief in this case in light of the enormity of the administrative problem which would be posed in implementing this decision and the fact that future petitioners may rely upon our determination herein. As we recently noted, '[t]he availability of class action relief has only recently been the subject of a lengthy exposition which expanded its acceptance in the courts of this State *(Ray v Marine Midland Grace Trust Co.,* 35 NY2d 147). Without detracting from that opinion, or the modern concept of class actions, in this particular situation, where governmental operations are involved, and where subsequent petitioners will be adequately protected under the principles of *stare decisis (Matter of Rivera v Trimarco,* 36 NY2d 747), we are of the opinion that class action relief is not necessary' *(Matter of Jones v Berman,* 37 NY2d 42, 57)." (Accord, *Matter of Dumbleton v Reed,* 40 NY2d 586.)

The rationale thus stated is particularly applicable here and we therefore find that a class action is inappropriate.

Accordingly, the matter should be remitted to the Erie

3. Class action status was denied by Special Term in Matter of Ferguson v Sipprell, and petitioners in that case did not file a cross appeal from that determination.

County Department of Social Services for further proceedings in accordance with this opinion.

CARDAMONE, J. P. (concurring in result). We cannot agree with the majority that the local agency may lump the Federal and State educational grants together and consider any resultant excess of educational funds as available income for the purpose of reducing petitioners' AFDC grant.

The main question presented on this appeal is whether the grants and loans administered by the United States Commissioner of Education may *first* be applied by the local agency against this AFDC recipients' educational expenses and any remaining educational expenses then compared against non-Federal loans and grants to determine whether there is any available income for the purpose of determining the amount of petitioners' public assistance grants.

As a general principle, the local agency in determining need shall take into consideration any income and resources of any child or relative claiming AFDC assistance (US Code, tit 42, § 602, subd [a], par [7]; 45 CFR 233.20 [a] [1]; 18 NYCRR 352.16 [a]). However, in determining the availability of income and resources, loans and grants used under conditions that preclude their use for current living costs will not be included as income (45 CFR 233.20 [a] [3] [iv] [b]); in determining need and the amount of assistance payments any grant or loan to any undergraduate student for educational purposes made or insured under any program administered by the Commissioner of Education will be disregarded as income and resources (45 CFR 233.20 [a] [4] [ii] [d]). Further, New York regulations provide that "[n]o part of a scholarship, grant or other such income that is necessary to cover the cost of necessary or essential school expenses * * * and is actually so used"; and "[n]o grant or loan to an undergraduate student for educational purposes made or insured under any program administered by the United States Commissioner of Education" shall be considered as income or resources in determining need and the amount of assistance (18 NYCRR 352.16 [c] [1] and [2]).

It is clear, therefore, that the Federal BEOG and NDSL grants and loans may not be treated as income. Were a student to receive only such Federally administered funds and were such funds in excess of necessary educational expenses, any overage could not be deemed available income. The question presented here is whether the State agency may *initially*

deduct verified necessary educational expenses from the Federally administered loans and grants and then charge any remaining educational expense to non-Federally administered grants and if there is any excess, consider that as available income to reduce the recipient's AFDC grant. Although Special Term found that such Federal grants must be totally disregarded, the procedure of first comparing the Federal grants to the recipient's actual educational expenses and then applying non-Federal loans and grants to remaining educational expenses and reducing the recipient's AFDC grants by any remaining funds (available income) has been approved in the Federal courts *(Richman v Juras,* 393 F Supp 349, 351). The Third Department found that 45 CFR 233.20 (a) (4) (ii) (d) and 18 NYCRR 352.16 (c) (2) are in conflict with section 602 (subd [a], par [7]) of title 42 of the United States Code, 45 CFR 233.20 (a) (3) (iv) (b) and 18 NYCRR 352.16 (c) (1) and should be read so that the overriding purposes of both shall be served. "The stated purpose of the AFDC program is to provide aid for 'needy children' (US Code, tit 42, § 602, par [a]; *Shea v Vialpando,* 416 US 251, *supra).* To provide a windfall of money because of overlapping educational programs would be contrary to this purpose" *(Matter of Lumpkin v Department of Social Servs. of State of N. Y.,* 59 AD2d 485, 490). That court held that Federally administered grants can be taken into consideration in determining whether non-Federally administered educational grants or loans can be treated as available income in budgeting AFDC benefits. We are persuaded by such reasoning and adopt it. This is not to say, as the majority holds, that excess Federal grants may be used to offset AFDC assistance. Such a holding was not reached by the court in *Lumpkin* and is in direct conflict with the State and Federal regulations.

We recognize that a purpose of the AFDC program is to provide aid for needy children, however, "A principal purpose of the program, as indicated by 42 U.S.C. § 601, is to help such parents and relatives 'to attain or retain capability for the maximum self-support and personal independence consistent with 'the maintenance of continuing parental care and protection' " *(Shea v Vialpando,* 416 US 251, 253). Obtaining a college education is one method for a needy individual to achieve the capability for maximum self-support and should be aided without the agency imposing unnecessary barriers and disincentives. Any reduction of an AFDC grant because of

the alleged receipt of excess educational grants should be closely scrutinized. Further, since the policy of the program under which these grants were made clearly was not to reimburse the social services agency, a broad meaning of the term "necessary or essential" educational expenses should be adopted. Viewed in this light we agree with Special Term that commuter school lunches are permissible uses of EOP funds and that petitioners should have an opportunity to verify certain educational expenses claimed in their petition.

Accordingly, we believe that the judgments should be modified as set forth in this opinion.

DILLON and WITMER, JJ., concur with DENMAN, J.; CARDAMONE, J. P., and HANCOCK, JR., J., concur in result only in an opinion by CARDAMONE, J. P.

Judgments modified in accordance with opinion by DENMAN, J., and, as modified, affirmed, without costs, and matters remitted to Supreme Court, Erie County, for further proceedings accordingly.