Ms. Barbara HAYES, Ms. Cerise Jones, Ms. Marion Brown, Ms. Jacqueline Amos, Ms. Lucia Acevedo on behalf of themselves and on behalf of all persons similarly situated, Plaintiffs,

v.

CITY UNIVERSITY OF NEW YORK, a body corporate, Robert J. Kibbee, Chancellor of the City University of New York, Leo A. Corbie, University Dean for Special Programs, Human Resource Administration of the City of New York, Blanche Bernstein, Commissioner of the Human Resource Administration, Howard Miller, Jr., Budget Director of the State of New York, Arthur N. Gordon, Acting Director of the New York City Audit Bureau, New York State Department of Social Services and Barbara B. Blum, Commissioner of New York State Department of Social Services, Defendants.

No. 77 Civ. 5476 (KTD).

United States District Court, S. D. New York.

July 5, 1978.

Nathaniel R. Jones, James I. Meyerson, George E. Hairston, N. A. A. C. P., New York City, for plaintiffs.

Louis J. Lefkowitz, Atty. Gen. for the State of New York, New York City, for

defendants Miller, Gordon, Blum and Dept. of Social Services by Robert A. Forte, Asst. Atty. Gen. of the State of New York, New York City, of counsel.

Allen G. Schwartz, Corp. Counsel, New York City, for defendants Human Resource Administration and Bernstein by Judith A. Levitt, Asst. Corp. Counsel, New York City, of counsel.

Mary P. Bass, New York City, Gen. Counsel, Board of Higher Ed. for defendants City University of New York, Kibbee and Corbie.

### OPINION AND ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiffs, students enrolled at defendant City University of New York (CUNY) who are recipients of both public assistance and certain state funded educational grants, have moved for a preliminary injunction enjoining defendants CUNY, Human Resource Administration (HRA), New York State Department of Social Services and various officials of these bodies from implementing or enforcing certain policies requiring the recomputation and reduction of either plaintiffs' educational financial aid stipends or their public assistance benefits. A hearing on this motion was held on June 6 and 7, 1978, and CUNY thereafter filed a post-trial memorandum. This opinion constitutes my findings of fact and conclusions of law.

Plaintiffs and their proposed class,[1] allegedly composed principally of Black and Hispanic women with dependent children, are public assistance recipients and CUNY students who also are receiving financial aid stipends from CUNY under one of two state funded programs: Search for Education, Elevation and Knowledge (SEEK) and College Discovery (CD). Certain of plaintiffs additionally receive federally funded

and other types of state funded educational assistance grants, including aid under the New York State Tuition Assistance Program (TAP). On November 11, 1977, plaintiffs commenced this purported class action essentially challenging, on constitutional grounds, the implementation of a new CUNY budget and guidelines for public assistance recipients in special programs for the 1977–78 school term, to be retroactively applied to the 1976–77 term, which directed recomputation and reduction of SEEK and CD stipends to the extent that these monies exceeded those students' actual educational expenses, and prescribed recoupment of this excess previously awarded out of the reduced sum in certain cases. Prior to the formulation of this budgetary policy, the SEEK and CD stipends awarded to students receiving public assistance included certain funds allocated for maintenance and living expenses ("living differential") as well as to "actual" educational expenses such as books and supplies, tuition and lunch. Allegedly, students in SEEK and CD programs not in receipt of public assistance were to continue to obtain this living differential.

On November 14, 1977, I issued an order temporarily restraining CUNY from implementing their new budget guidelines pending a development of the relevant facts. To date CUNY voluntarily has refrained from taking any action to reduce plaintiffs' financial aid stipends.[2] However, in December, 1977, New York State Department of Social Services issued an administrative directive interpreting 18 N.Y.C.R.R. § 352.-16(c). It is this directive which prompted the instant motion.

N.Y.C.R.R. § 352.16 provides:

(a) All income and resources of an applicant for or recipient of ADC or HR shall be considered in order to determine its availability; such income and resources shall be reasonably evaluated; and, when

---

1. To date, this action has not been certified as a class action. Although plaintiffs' class certification motion is *sub judice*, the contested issues raised by that motion will not be resolved herein.

2. In fact, CUNY has joined in plaintiffs' motion insofar as it seeks to preliminarily enjoin the state and city defendants from downwardly adjusting plaintiffs' public assistance grants so as to reflect their receipt of the living differential.

determined to be available, after policies governing the exemption and disregard of such income and resources have been applied towards meeting the needs of an individual and his dependents. No inquiry shall be made of the amount of earnings of a child under 14 years of age. (b) When the terms of an award, the legislative intent of a government benefit, the rules of an organization paying a benefit, the nature of a trust fund, or the agreed upon intent of a friend, non-legally responsible relative or friend is sought to be restricted for the purpose of supplementing a State prescribed or approved standard it shall not qualify as a permissible restriction of income, unless the social services official determines that the health and welfare of the recipient would be specifically and materially enhanced thereby.

(c)(1) No part of a scholarship, grant or other such income that is necessary to cover the cost of necessary or essential school expenses (e. g., tuition, books, fees, equipment, special clothing needs, transportation to and from school, and child-care services necessary for school attendance), and is actually so used, shall be considered as income in determining need and amount of assistance.

(2) No grant or loan to an undergraduate student for educational purposes made or insured under any program administered by the United States Commissioner of Education shall be considered as income or resources in determining need and amount of assistance.

In purportedly clarifying the types of resources which may be considered as available income in accordance with the above quoted regulation, the implementing directive in issue prescribes the total exemption of federally administered or insured program funds ("federally-sourced funds") for those students who receive only federally-sourced funds, and the exemption to the extent of necessary and essential school expenses of other than federally-sourced funds (such as SEEK, CD and TAP awards) for those students who receive only funds from such sources. However, if a student receives both federally and other-sourced educational monies, the directive provides for the application of necessary and essential school expenses against the total amount of funds received; if the total is in excess of necessary and essential school expenses, the expenses are to be applied against the exempt monies before the non-exempt monies and any balance representing non-exempt monies is to be considered available income prorated over the school term it is intended to cover from the time of actual receipt. In this connection, the directive includes, without limitation, as necessary and essential school expenses the following: tuition, books, fees, equipment, special clothing needs, transportation to and from school, and child-care services necessary for school attendance.

Supposedly this directive was bottomed on the proposition that the plaintiffs should not receive monies from two different public sources to cover the same necessary living expenses.

In accordance with this directive, HRA began to treat plaintiffs' receipt of SEEK and CD monies, to the extent that they exceeded plaintiffs' actual educational expenses (that is, to the extent of the living differential) as available income to be considered in computing plaintiffs' public assistance grants, and to reduce those grants accordingly. Allegedly, the reductions also reflect recoupments of "overpayments" as the directive has been applied retroactively to the beginning of the 1977–78 school term, and take into account, as income, portions of TAP, as well as CD and SEEK grants.

In light of this development, plaintiffs amended their complaint so as to challenge HRA's and the Department of Social Services' actions which resulted in the reduction of plaintiffs' public assistance awards. The amended complaint, then, alleges that the acts and policies of the university, state and city defendants violate rights guaranteed plaintiffs under the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the United States Constitu-

tion as well as various federal and state statutes,[3] and seeks declaratory and injunctive relief. Pending the outcome of this action, plaintiffs, by this motion, seek to enjoin reductions of either their CUNY financial aid stipends or their public assistance grants and to compel restoration of public assistance benefits equaling sums already reduced.[4]

In order to succeed on their motion, plaintiffs must demonstrate either (1) irreparable injury and a likelihood of success on the merits, or (2) a balance of the hardships tipping decidedly in their favor coupled with sufficiently serious questions going to the merits so as to make them a fair ground for litigation. *Sonesta International Hotels Corp. v. Wellington Associates*, 483 F.2d 247 (2d Cir. 1973). A showing of irreparable harm is an essential component of both formulations. *Jacobson & Co., Inc. v. Armstrong*, 548 F.2d 438, 441 (2d Cir. 1977). Plaintiffs posit that they amply have demonstrated irreparable injury through the testimony and affidavits of named plaintiffs and other CUNY students who are public assistance recipients in SEEK or CD programs but who are not named plaintiffs in this action, indicating, *inter alia*, that their reduced public assistance grants are insufficient to cover their living expenses and that without an increase in CUNY financial aid monies, they will be unable to attend school during the 1978–79 term.

Thus, Lucia Acevedo, the only named plaintiff to testify, stated that she has one child and attends Lehman College. Ordinarily, she receives a $166.50 semi-monthly public assistance check. During the last school term she received a $1,162 federal Basic Educational Opportunity Grant (BEOG), a $998 SEEK stipend, and a $775 TAP award. In January and February, 1978 pursuant to notice her public assistance grant was reduced because of her receipt of SEEK and TAP grants. She received a fair hearing in February, 1978 after which her reduction was adjusted by decision dated March 22, 1978, so as to provide her with $80.20 in public assistance monies semi-monthly which she is presently receiving. According to her fair hearing decision, this sum was computed by applying Ms. Acevedo's actual school expenses of $1,209, which exceeded the amount of her

3. Plaintiffs' constitutional challenge is generally directed at defendants' purported disparate treatment of plaintiffs and at the alleged arbitrary, abusive, unauthorized and unduly burdensome nature of the reductions and recoupments.

In addition, CUNY is charged with violations of plaintiffs' rights under the Fourth Amendment and the Family Educational Rights and Privacy Act of 1974, 20 U.S.C. § 1232g(b)(1) as well as 45 C.F.R. § 205.50 *et seq.*; and of contravening the New York State Higher Education Opportunity Act. The remaining defendants are charged additionally with violating the Aid to Families With Dependent Children program contained in 42 U.S.C. § 601 *et seq.* and Department of Health, Education and Welfare implementing regulations.

4. Plaintiffs additionally seek to enjoin HRA from "reducing the public assistance grants of plaintiffs before notice and an opportunity for a fair hearing and of recouping alleged 'overpayments' in such large amounts that plaintiffs and members of their proposed class are caused undue hardship." Motion for a Preliminary Injunction ¶ 13.

With regard to reductions prior to notice and an opportunity for a fair hearing, the complaint alleges that of the five plaintiffs, one received notice of an impending reduction in her public assistance grant but was not reduced, and a second, Lucia Acevedo, actually received a reduction prior to a fair hearing but after notice and after she had requested a fair hearing. According to the record, Ms. Acevedo had a fair hearing in February, 1978 and by decision dated March 22, 1978, her reduction was adjusted upwards and affirmed. There was no evidence adduced indicating that other named plaintiffs would be subjected to reductions prior to notice and an opportunity for a hearing. With regard to recoupments, the record reflects that Ms. Acevedo, the only plaintiff whose public assistance was reduced, received a reduction reflecting a proration over a ten-month period of an amount deemed available income in stipend funds. To the extent that this proration and reduction occurred while Ms. Acevedo was still in school and receiving stipend monies, it cannot be considered "recoupment." To the extent that the reductions are continuing during the summer months after the cessation of her receipt of financial aid monies, it will be considered recoupment. Since I have determined that plaintiffs have not demonstrated irreparable harm, even taking this "recoupment" situation into account, *see* p. 1123 *infra*, I need not separately consider it.

federal BEOG grant, against the amount of her TAP and SEEK awards, with the excess of $1,726 deemed available income prorated over a ten-month period semi-monthly.

Ms. Acevedo further testified that at the present time she is subsisting solely on her $80.20 semi-monthly public assistance monies and she has monthly expenses of $190 in rent, $45–48 in utilities and $15–20 for her telephone. She stated that if her public assistance remains at $80.20 during the summer months she will "be thrown out of [her] house [since she] won't be able to pay rent," and that without an increase in CUNY financial aid monies, she will be unable to attend school during the 1978–79 term. (Transcript, p. 155).

While it cannot be gainsaid that plaintiffs have presented a picture of financial difficulty, they have also adduced evidence tending to undercut their position. Thus, with respect to their fears of inability to pay rent and other expenses, Diana Voelker, a Social Service Counselor for the Higher Education Opportunity Program testified that student welfare recipients whose public assistance grants are reduced because of their receipt of financial aid and who cannot pay their rent as a result of the reduction can seek and obtain an advance of monies for rent payments from the Department of Social Services. This mechanism, then, provides plaintiffs with some measure of relief during the summer months when financial aid monies are unavailable.

I also note that Ms. Acevedo testified that her educational grants covered all of her educational expenses. This is hardly surprising, since at the crux of this action at this juncture, is the fact that CUNY allocates a portion of their financial stipends as a living differential. CUNY, joining in plaintiff's motion to enjoin preliminarily the public assistance reductions, adduced the testimony of Douglas Strauss, one of its college's Financial Aid Coordinators. Mr. Strauss testified that the amount of CUNY financial aid—whether in TAP, SEEK, CD or federal funds or in combination thereof—awarded a student was represented by the difference between the student's own resources, including any public assistance grant, and a CUNY-developed budgetory standard based on a low-moderate standard of living, which included as categories of need not only tuition, fees, books, supplies, transportation and food, but also housing, medical, ordinary clothing and personal expenses such as pocket and household monies and the costs of cultural activities. That CUNY does not intend to eliminate this latter living differential is reflected in Mr. Strauss' testimony that if a student's public assistance grant were reduced, then, under the above formulation and to the extent not precluded from so doing by ceiling limitations on various program funds, CUNY would endeavor to give that student more monies in financial aid when the applications for the same were evaluated. He also testified that CUNY has less available funds for financial aid than applicants in need. Rather than provide some funds to all applicants, however, Mr. Strauss stated that, out of the eligible students, CUNY will provide financial aid to those most in need before those less so; in his words, "the student who needs $1,000 will get that $1,000 before the student who needs $500." (Transcript, p. 99).

■ I am not unaware of the possibility that if CUNY granted additional monies to plaintiffs as a result of their reduced public assistance grants, a concomitant further reduction in public assistance funds may result. However, it is clear that at no time will plaintiffs be subject to a reduction of both their financial aid monies and their public assistance grants. Thus, for the upcoming semester, plaintiffs will receive financial aid funds to cover both their "actual" educational expenses and a living differential, as well as public assistance monies to cover the balance of their living needs according to State-established standards not here in issue.

Plaintiffs argue that the above proposition misses the mark, since as a consequence of the reductions prorated over a ten-month period, "plaintiffs will receive less [in public assistance monies] than they

would receive under the State's standard of need." Plaintiffs' Memorandum of Law in Reply, pp. 4–5. However, it is precisely because of plaintiffs' receipt of the living differential that the State has undertaken to adjust plaintiffs' public assistance grants so as to conform to the State's "level of need." It is precisely the fact of this adjustment that renders untenable plaintiffs' insistence that they will be forced to discontinue their studies absent an increase in financial aid monies. If plaintiffs were to leave school, they would receive an amount in public assistance benefits which would equal the total of the amount presently received and the amount of their stipends allocated as a living differential. Either way, then, in or out of school, plaintiffs will be maintained at the same "level of need" set by the State that plaintiffs, in their words, "do not (and cannot) challenge . ." Plaintiffs' Memorandum in Reply, p. 4. It does not follow that because plaintiffs have been deprived of a low-moderate standard of living and must adjust to that same level of subsistence in school as they would have to out of school that the latter is their only course at this juncture.

It would thus appear that the gist of plaintiffs' claims of irreparable harm focuses on their financial difficulties resulting from the fact that the public assistance reductions, prorated over a ten-month period apparently representing the school term during which financial aid was forthcoming, are in present force during the three-month summer recess when no offsetting CUNY living differential is available. That plaintiffs have some available relief through seeking an agency advance has already been discussed. That plaintiffs, should they ultimately succeed in this action, may be reimbursed for the reductions is evident. Plaintiffs insist that reimbursement in the event of their ultimate success in this action is inadequate relief and will not remedy the substantial loss of public assistance benefits and corresponding inability to maintain themselves presently suffered. It is true that irreparable harm may consist of a continuing wrong which cannot adequately be redressed by the ultimate relief sought.

*New York Pathological and X-Ray Laboratories, Inc. v. Immigration and Naturalization Service, et al.,* 523 F.2d 79, 81 (2d Cir. 1975). However, for the reasons already discussed and on the basis of the record before me, I cannot conclude that such is the case here. Plaintiffs have simply failed to demonstrate irreparable harm entitling them to the relief they seek.

While I thus need not pass on plaintiffs' likelihood of success on the merits, I do note that the issue presented by this action has been addressed by both a state and federal court and resolved in favor of defendants. *In re Lumpkin v. Department of Social Services of the State of New York,* 59 A.D.2d 485, 400 N.Y.S.2d 220 (3d Dep't 1977); *Richman v. Juras,* 393 F.Supp. 349 (D.Or.1975). While plaintiffs rely on *Brown v. Bates,* 363 F.Supp. 897 (N.D.Ohio 1973), to support their position, that case is distinguishable. *Brown* held that monies received under the Federal Work Study Program, 42 U.S.C. § 2751 *et seq.,* by categorical public assistance recipients could not be treated as available income so as to reduce those students' public assistance grants. As to students in receipt solely of federal educational monies, there is no dispute in this case regarding the exemption of such monies as income. Indeed, the State administrative directive here in issue requires such treatment. Rather, the issue confronting this court concededly concerns the treatment of funds received from overlapping educational assistance programs on the federal and state levels; that is, whether federal educational grants may be considered by HRA in determining if state educational funds can be treated as available income for the purpose of awarding public assistance. With regard to this issue, reliance on *Brown* is unavailing.

Plaintiffs' motion for a preliminary injunction is denied.

SO ORDERED.