Chief Judge Breitel.
Plaintiff Bay, purporting to represent himself and certain of the owners of certain Webb & Knapp, Inc. debentures, has brought a class action against the indenture trustee, appellant Marine Midland Grace Trust Company. Bay alleges breach of trust, gross negligence, and conflict of interest by Marine Midland in failing to protect to their loss the rights of owners of Webb & Knapp 5% Sinking Fund Debentures, who acquired them prior to May 7, 1965 and still own or sold them at a loss after June 1,1961. The only issue on this appeal by the trustee is whether the class action is maintainable. Both courts below have allowed the class action.
There should be an affirmance. Where, as here, there are predominant, common issues of breach of duty and neglect by *150 an indenture trustee, CPLR 1005 would authorize a class action to be brought on behalf of all debenture holders. Such a conclusion is warranted both by the broad language of CPLR 1005 and by underlying considerations of public policy. The failure to act, if that be so, by the trustee at a critical juncture in Webb & Knapp’s troubled affairs will be the decisive and most complex issue in any individual debenture holder’s suit and might best be resolved in a single action. Moreover, the interest of the individual members of the class in the litigation is not speculative or contrived, but very real.
The facts, so far as they relate to the class action issue, may be briefly summarized. In 1954 Webb & Knapp, a well-known, wide-ranging, real estate enterprise, issued and publicly offered 5% Sinking Fund Debentures in the principal amount of $8,607,600, in the acquisition of a large office building in Manhattan. By the terms of the trust indenture, interest was payable at the rate of 5% per annum, payable semiannually until maturity on June 1, 1974. Bach year, on June 1, 5% of the total principal amount was to be redeemed. Marine Midland was named indenture trustee to enforce certain covenants in the indenture and to exercise certain rights on behalf of debenture holders in the event of default.
After issuing the debentures in 1954 Webb & Knapp engaged in a series of unprofitable land development and hotel construction projects. In 1965, Webb & Knapp joined in a petition for reorganization under chapter X of the Bankruptcy Act (U. S. Code., tit. 11, § 501 et seq.). Financial statements at that time showed assets of $21,558,621 and liabilities of $60,036,164 of which almost $30,000,000 were “ secured liabilities ”. Apparently, nothing would remain for the debenture holders.
Plaintiff Ray has held debentures continuously since 1956. Since 1963, he has sold $99,000 in principal amount and now holds $13,000 in principal amount of the debentures. The total principal amount outstanding is $4,298,200. Ray’s allegations of negligence and breach of trust by Marine Midland, detailed in the complaint, are based on its failure to act affirmatively to protect debenture holders at an appropriate time prior to chapter X proceedings, resulting in the market value of the debentures declining from 89% to 7%.
*151 CPLR 1005 (subd. [a]) which governs the availability of a class action provides “ Where the question is one of a common or general interest of many persons or where the persons who might be made parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all.” The language is broad, and intentionally so, allowing for judicial decisional elaboration. Certainly the provision, dating back to the Field Code of Procedure of 1848, as amended in 1849 (L. 1849, ch. 438; see former Code Civ. Pro., § 448 and former Civ. Prac. Act, § 195, predecessors of CPLR 1005), was intended to be as broad as the class action remedy fashioned and available in equity (see Hansberry v. Lee, 311 U. S. 32, 41; Blume, The “ Common Questions ” Principle In The Code Provision For Representative Suits, 30 Mich. L. Rev. 878-879; Weinstein, Revision of Procedure: Some Problems in Class Actions, 9 Buffalo L. Rev. 433, 454-455). It is generally accepted that the language of the Field Code provision adopted in 1849 was a paraphrase of the discussion in Mr. Justice Story’s classic treatise on “ Equity Pleading ” (see Blume, The 1 ‘ Common Questions ’ ’ Principle In The Code Provision For Representative Suits, loo. cit., 9 Buffalo L. Rev. 433). The decisional history supports the evident purpose of judicial elaboration and the use of the remedy as doctrines of equity broadened.
In the many cases decided over the years, there has been a continuing development and definition of the appropriate sphere of class actions, consonant with the development of remedies and substantive rights in equity, sometimes more restrictive and at other times more expansive depending upon current attitudes. Thus, it has been repeatedly held that separate wrongs to separate persons, even if committed by similar means and pursuant to a single plan, do not alone create a common interest to sustain a class action (Gaynor v. Rockefeller, 15 N Y 2d 120; Society Milion Athena v. National Bank of Greece, 281 N. Y. 282, 292-293; Brenner v. Title Guar. & Trust Co., 276 N. Y. 230). Simply because all depositors of a bank had allegedly been defrauded by the bank did not, without more, allow for a class action against the bank on behalf of all depositors (Society Milion Athena v. National Bank of Greece, supra). Five persons were not permitted to maintain a class action on behalf of 50,000 members *152 of a club seeking to recover all membership dues because of an alleged misrepresentation in recruiting the members (Onofrio v. Playboy Club of N. Y., 15 N Y 2d 740, revg. on dissenting opn. at Appellate Division 20 A D 2d 3, 6). And in the Gay nor case, it was held that all Negro citizens of New York State were not a proper class for an action alleging discrimination in membership by construction unions working on public projects. (For an interesting, critical survey of the history of class action doctrine in New York, see Comment, Symposium on Class Actions, 68 Northwestern Univ. L. Rev. 991, 1108-1121.)
Of course, there was, no difficulty in finding a sufficient and pragmatic tie of common interest where all members of the purported class were potential claimants to a limited fund for recovery of their several claims (see, e.g., Tyndall v. Pinelawn Cemetery, 198 N. Y. 217; Guffanti v. National Sur. Co., 196 N. Y. 452). Class actions were also sustained, without difficulty, where the relief sought was common to all members of the class, so that the relief sought by one would satisfy all. That would be the cáse, for example, in an action for an injunction or for declaratory relief (see, e.g., Kovarsky v. Brooklyn Union Gas Co., 279 N. Y. 304). Since the courts, in applying the broad provisions of section 1005 have had the least difficulty in sustaining class actions in the areas last mentioned, they have been the principal ones brought under the statute and its predecessors (see Eighteenth Annual Report of N. Y. Judicial Council, 1952, pp. 230-233).
But these instances, involving a common fund or a common form of relief, by no means mark the outer limits of class actions. CPLR 1005, as noted earlier, was drafted in broad and flexible language. Moreover, the very device of the class action was a flexible remedy of equity, which perforce should be applied progressively as equity still develops (see, generally, for a discussion of the availability of equity to prevent multiplicity of suits, 1 Pomeroy Equity Jurisprudence [5th ed., 1941], §§ 243-244). It would be anomalous to regard the statute, progressive in concept, as intended to restrict the scope of equity or to freeze its development. It has, therefore, always remained for the courts to give meaning to the remedy, based on substantive and developing equitable considerations.
*153 Most recently, those associations growing out of trust, partnership, or joint venture have been said to be most likely sufficient to sustain class actions (see Hall v. Coburn Corp. of Amer., 26 N Y 2d 396, 402, and cases cited). In Lichtyger v. Franchard Corp. (18 N Y 2d 528) it was said that a class action for damages could be brought on behalf of all limited partners in a real estate syndicate against the two general partners. The plaintiff alleged a breach of fiduciary duty resulting in diminished return on investment to the limited partners. The wrongs, or series of wrongs, alleged were common to all limited partners. Although there were many limited partners, each had a significant financial interest at stake, even though individual actions might not have been feasible. Most important, the individual recoveries would be different in amount, and some of the limited partners were satisfied with the arrangements charged as wrongs (p. 533).
The Lichtyger case reflects that case-by-case approach in applying the broad language of CPLR 1005. No rigid rule has been applied to bar class actions. Instead there has been consideration of the nature and strength of the tie among members of the class. As Judge Fuld wrote in the Lichtyger case, “ To be sure, many of these cases involve a fund with only a limited capacity to satisfy the claims asserted against it [citations omitted] but we have also permitted class actions for money damages or equitable relief to be brought in the absence of a ‘ common fund ’ ’ ’ (18 N Y 2d, at p. 535; see, to like effect, Daar v. Yellow Cab Co., 67 Cal. 2d 695, 707; Richards v. Kaskel, 32 N Y 2d 524, where the courts upheld a class action by tenants seeking a declaratory judgment that a co-operative plan was invalid because induced on fraud).
Instructive in showing the limits of the class action device is Hall v. Coburn Corp. of Amer. (supra) which rejected a class action. The class sought to be represented were all consumers who had signed retail installment sales agreements containing “ small-print ”. The print was smaller than permitted by a consumer-protection statute and the plaintiff sought to recover statutory penalties from the finance company which purchased the agreements. The court then found that there was no tie among the members of the class, except the coincidence that each signed a similar form (26 N Y 2d, at p. 400). The interest of *154 each consumer in the action was unclear. Moreover, the court noted that the public policy of enforcing a ban on small print in consumer contracts could better be enforced by the Attorney-General or the Banking Department. All these policy considerations, then, were relevant in interpreting CPLB 1005.
In applying these considerations to this ease, it is concluded, at the present stage of the litigation, that there is a sufficient common tie to sustain a class action. All are holders of debentures benefited by the same trust indenture with similar duties owed them by the trustee. In all probability each would be injured in the same manner, if at all, by the same series of alleged wrongs committed by the trustee. Each has a strong financial stake in the outcome of the litigation, although separate action by each might or might not be feasible. And, of course, the common questions predominate in complexity and importance over any individual questions.
Most important, the common issue in the case, that of the alleged breach of trust by the trustee, is peculiarly an issue cognizable in equity and facilely the subject of declaratory relief. Moreover, it is in equity jurisprudence that the courts have the power and duty to fashion an adequate remedy where the one at law is inadequate or nonexistent. Economy to the judicial system as well as to the potentially litigating debenture holders would be achieved by a single determination on that issue. Indeed, separate actions would undoubtedly merit a joint trial, or even consolidation, to resolve that single issue most economically. More troublesome, but not insuperable, qualifications stem from the likely variations in the harm sustained by the separate debenture holders, and the availability of waiver or estoppel defenses against some but not all holders. Those problems, which perhaps at another time would have inhibited the remedy of a class action, should no longer apply in view of the circumscribed nature of the basis for applying the remedy in this case.
Moreover, the problems which may be engendered by the “ differences ” among the debenture holders may be handled by various procedural devices as are now common in actions and proceedings embracing nlany diverse claimants as, for example, in eminent domain, certain wide-impact nuisance actions, multiple accident tort actions, and the like. And even these *155 problems would not be engendered unless first the defendant has been found guilty of a breach of trust.
There are other faptors, toó, which suggest sustaining this class action. The number of persons to be joined, were the class to be disallowed, would be so large that joinder would be impracticable. Yet-the number of persons is not so large or unwieldy as to render the action simply one designed to vex the defendant. Also, there is every indication, based on the nature of the claims and the interest of plaintiff Ray, that he will be a fair representative of the class. That has always been a critical factor in class actions, allowed by statute or permitted in equity jurisprudence (see Hansberry v. Lee, 311 U. S. 32, 41, supra). (These and other relevant factors have been analyzed in successive studies and proposals developed by Professor Adolf Homburger and an advisory committee for the Judicial Conference; see Nineteenth Annual Report of N. Y. Judicial Conference, 1974, pp. A38-A44; Eighteenth Annual Report of N. Y. Judicial Council, 1952, pp. 221-249; the far-reaching proposals in statutory form, with controversial implementing details, have not yet been adopted by the Legislature [see Moore v. Metropolitan Life Ins. Co., 33 N Y 2d 304, 313].)
That this class action may be allowed would not limit the broad discretion vested in the trial court to administer the litigation. As provided in CPLR 1005 (subd. [b]) the court has discretion to order notification of members of the class and otherwise protect all members of the class. Beyond that, the discretion of the courts persists to reconsider the advisability of a class action at any stage if it develops that the class is unwieldy, the representation ineffective, or if it should later appear that the principal issue is not appropriate for adjudication in a class action. Although irrelevant to this State court action, quite informative and useful, both in delineating the scope of the class action, under Federal rule 23 (Fed. Rules Civ. Pro., rule 23, as amd., eff. July 1, 1966) and in marking out obvious difficulties are recent cases in the Federal courts (see, e.g., Eisen v. Carlisle & Jacquelin, 42 U. S. L. W. 4804 [May 28, 1974], vacating 479 F. 2d 1005).
To the extent, if any, that the present view may appear to expand on the availability of class actions, it is emphasized again that CPLR 1005, which controls, is not and has never been a *156 rigid framework. Recently, this court observed that “ the restrictive interpretation in the past of CPLR 1005 and its predecessor statutes no longer has the viability it may once have had [citations omitted] ” (Moore v. Metropolitan Life Ins. Co., 33 N Y 2d, at p. 313; see, also, generally, the discussion of class actions in Hall v. Coburn Corp. of Amer., 26 N Y 2d 396, 401-402, supra, emphasizing that class actions have been favored in relationships growing out of trusts and noting an expansive development in entertaining class actions; see, contra, Elkind v. Chase Nat. Bank, 259 App. Div. 661, 665, affd. 284 N. Y. 726). The statute, defining class actions in flexible language, it has always been for the courts to elaborate on its scope and limitations.*
Accordingly, the order of the Appellate Division should be affirmed and the question certified by that court answered in the affirmative.

 CPLR 1005 makes no reference to the giving of notice to all members of the class of the pendency of the action. In that respect it is unlike rule 23 of the Federal Rules of Civil Procedure. Whether beyond statute or rule there is a due process of law limitation requiring such notice is not suggested or considered at this time.