John H. Doerr, J.
In this CPLR article 78 proceeding petitioners, individually and as members of a definable class, *600 attack adverse determinations by respondents as arbitrary, capricious and contrary to law.
Petitioners and their minor children are recipients of social service grants made under the category of Aid to Families with Dependent Children (ADCj.
Each of them is also the beneficiary of certain State funds under the Educational Opportunities Program (EOP) in conjunction with their student enrollment at the State University of New York at Buffalo. In addition, petitioner Tavarez receives an Educational Opportunity Grant (EOG) from Federal funds.
The Erie County Department of Social Services by notice dated January 3, 1974, advised petitioner Taverez of its proposal to discontinue assistance to her on the basis that her educational grants were income to be applied toward living expenses, and that the past failure to budget the EOP and EOG moneys resulted in an overgrant to be recouped by the withholding of future assistance payments.
A similar notice to petitioner Stover, dated February 8, 1974, advised her of a proposed assistance reduction on the basis that all but $120 of her educational grant was income.
In like manner, petitioner Dorn was notified by notice dated November 29, 1973, that all but $155 of her educational grant was income and that her assistance would be reduced accordingly.
In each instance the petitioners requested and received a fair hearing which resulted in an affirmance by respondent Lavine of the Erie County Department’s determination, which, due to the amount of the educational grants, reduced or terminated the public assistance grants payable to them.
Petitioners and the class they represent, are seeking: a reversal of the decisions made after the administrative hearings; an order that respondents disregard as income grants made to enable public assistance applicants and recipients to further their education; and an order to direct the respondents to refund all assistance wrongfully withheld from petitioners and all others similarly situated.
The question before this court is to determine whether the awards made in these cases must be included in the budgets of each petitioner as available income.
Section 352.16 of title 18 of the Official Compilation of Codes, Rules and Regulations of the State of New York *601 provides the general guidelines for determining income or resource availability. It states, in pertinent part:
"Exemption of income and resources-general policy.
"(a) All income and resources of an applicant for or recipient of AABD, ADC or HR shall be considered in order to determine its availability; such income and resources shall be reasonably evaluated; and, when determined to be available * * * shall be applied towards meeting the needs of an individual and his dependents * * *
"(b) When the terms of the award, [or] the legislative intent of a government benefit * * * limits the use of cash income, the social services official shall abide by such restriction when veriñed. The restriction may limit the use of the income to a specified purpose or to a particular member or members of the household.” (Emphasis added.)
Sections 131 and 131-a of the New York Social Services Law provide for the payment of monthly public assistance grants to "needy” persons and families. A reading of subdivision 1 of section 131 will shed light on the rationale of applying 18 NYCRR 352.16 (b) in this instance. This section provides in part: "[social services officials] shall, whenever possible, administer such care, treatment, and service as may restore * * * [those who are unable to maintain themselves] to a condition of self-support or self-care, and shall further give such service to those liable to become destitute as may prevent the necessity of their becoming public charges.” In addition, section 233.20(a)(3)(iv)(b) of title 45 of the Code of Federal Regulations provides: ”[i]n determining the availability of income and resources the following will not be included as income: * * * (b) loans and grants, such as scholarships, obtained and used under conditions that preclude their use for current living costs”.
Section 233.20(a)(4)(ii)(d) of title 45 of the Code of Federal Regulations provides: "[i]n determining need and the amount of assistance payment, the following will be disregarded as income and resources: * * * (d) [a]ny grant or loan to any undergraduate student for educational purposes made or insured under any program administered by the Commissioner of Education.”
The local agency and respondent Lavine both determined that the educational grants to petitioners were unrestricted, apparently because the grants were paid to petitioners without specific limitations that the funds be used only for educa *602 tional purposes. In addition, respondents have expressed dismay that such costs as transportation, lunches, day care, extracurricular activities and school supplies are being considered restricted resources. Respondents’ objections stem from the fact that such expenses have absolutely no preclusions or restrictions attached to them.
In deciding this controversy there are two social policy considerations that must be weighed. On the one hand, there is the concern for all public assistance recipients who, in many instances, are receiving grants determined to be the minimum amount of money needed for a person to provide merely the basic necessities of life. A primary objective of public assistance programs is to restore these individuals to a condition of self-support and self-care. Providing a higher education is often the best method to achieve this objective. On the other hand, we must weigh the legitimate concern of the Social Services Department over possible misappropriation of governmental funds by the recipients.
In weighing these considerations, this court holds that the intent of the Legislature would be thwarted if petitioners are required to allocate to income that portion of their educational grants which is in excess of college fees. In making this determination, this court takes into consideration the fact that educational expenses are not limited to tuition and school fees, to wit: excessive distance from an educational institution necessitates transportation expense. Children of a recipient require the care and protection of adequate day care facilities during the hours that the parent is in school, if there is no one at home to look after them. And there are those limited occasions where recipients cannot prepare a "pack” lunch in advance, but must purchase food at the institution in order to allow such individual to healthily pursue the day’s activities. This court takes notice of the fact that at many universities school life is not meant to be a sterile environment, but rather one full of stimulus enabling the student to receive a well-balanced education enriched with various extracurricular activities. Part of receiving a college education deals with what one can learn about himself, others and life in general outside of the classroom through various activities offered by the institution. Certainly there should be no question that certain school supplies are essential in order for a student to do the work required.
In short, the mere fact that certain funds are provided for *603 educational purposes without any restrictions as to their actual disbursement does not automatically put them in the category of "unrestricted” funds. In such instances where it would otherwise be impossible to acquire an education without providing day care for children, transportation expenses, and the like, expenditures for these categories — if verified — are considered to be spent solely for educational purposes. Only the excess, if any, remaining from petitioners’ educational allowances, after payment of their school expenses, should be considered as "available” income to be utilized for the support of themselves and their families.
As indicated earlier, the respondents both determined the educational grant was unrestricted because the grant was paid to the petitioners without specific limitations that the money be used only for educational purposes. It should be clear, however, that when an individual, receiving the same kind of public assistance and educational allowance as petitioners, has no other income outside of these funds, they will jeopardize and eventually lose their student status and eligibility for the allowance if they do not use the allowance to defray school expenses. Certainly, the Department of Social Services cannot expect such an individual to be able to afford to go to school on the regular allotment without being able to deduct various educationally related expenses to offset this amount from a grant as income. If this were so, it would be rare indeed, for a recipient to be able to transcend his or her station in life by receiving a formal education.
Therefore, when it can be shown that a portion of the EOF or EOG grant has been used to defray educationally related costs, and such payment was necessary to ensure continued enrollment in a college or university, such allowance must not be considered as unrestricted income or an unrestricted resource. In the opinion of this court, such a policy is demanded by the legislative intent in the drafting of the afore-mentioned statutes.
Such a position is supported by Brown v Bates (363 F Supp 897) where the court analyzed the intent of the legislation in order to determine whether certain Work-Study Program funds were available for use to meet current living costs. The court there, holding that the Ohio law conflicted with Federal regulations and that Work-Study Program funds were not to be considered as available income, concluded by stating (pp 902-903): "Congress, through the Work-Study Program, has *604 attempted to provide a vehicle for the indigent to use to escape the poverty cycle. If the money earned by the participants in the Work-Study Program is applied against other assistance programs, that vehicle’s utility is much weakened, and in many cases totally destroyed. The Court does not believe Congress chose by enactment of the Work-Study Program to draw the cycle of poverty tighter, but rather was attempting to break its bonds upon untrained poor. The Court will not allow the defendants to defeat this beneficient purpose by their own interpretation of the law, especially when the interpretation, however faithful it may be to the letter of the law, totally defeats the spirit of the law, and serves only a sterile administrative purpose.”
CPLR 1005 (subd [a]) provides that a class action may be maintained ”[w]here the question is one of a common or general interest of many persons”. The statute, as construed by our courts, has been given application to persons who have a common grievance which raises a common question of law and fact, and as to which a common defense may be asserted. (Ray v Marine Midland Grace Trust, 35 NY2d 147; Hall v Coburn Corp. of Amer., 26 NY2d 396; Gaynor v Rockefeller, 15 NY2d 120; Cummings v Regan, 45 AD2d 222.) At issue here is a matter of general concern to a definite and ascertainable class of persons (recipients of public assistance who, in addition, receive grants or scholarships to enable them to attend a college or university). Among the relief sought by petitioners is that of declaratory relief which, if granted, would be particularly appropriate to all members of the class. Since we are concerned with a challenge to a policy in force throughout the State, the interests of judicial economy and the avoidance of multiplicity of suits are served by permitting this matter to be treated as a class action.
In applying these considerations here, this court finds that there is a sufficient common tie to sustain a class action. In all probability, each member of the class would be injured in the same manner by the allegedly wrongful policy of the Department of Social Services. Each has a strong financial stake in the outcome of this litigation, although separate action by each might or might not be feasible. Furthermore, the common questions predominate in complexity and importance over any individual questions. Most important, however, the common issue in this case, the determination whether these educational grants are restricted or unrestricted, and the *605 appropriate order based on this determination, "is peculiarly an issue cognizable in equity and facilely the subject of declaratory relief.” (Ray v Marine Midland Grace Trust, supra, p 154.)
Consequently, the determinations of the respondents are annulled and the matters are remitted to determine how much, if any, of the petitioners’ educational grants, after providing for their school expenses as defined herein, is available income. Furthermore, before the Department of Social Services can attribute as available income an educational grant for an individual receiving public assistance, those veriñed educationally related expenses, as defined herein, are to be deducted from the amount of the grant and only the excess, if any, is to be attributed to available income.