SUFFOLK HOUSING SERVICES et al., Appellants, v TOWN OF BROOKHAVEN et al., Respondents.

Second Department, July 9, 1979

---

APPEARANCES OF COUNSEL

*Richard F. Bellman, Nathaniel Jones, James Meyerson, Lawrence Sager* and *Arthur Eisenberg (Eisner, Levy, Steel & Bellman, P. C. [Richard F. Bellman]* of counsel), for appellants.

*Joseph Mule, Town Attorney (Rathkopf & Rathkopf [Daren A. Rathkopf* and *Arden H. Rathkopf]* of counsel), for respondents.

## OPINION OF THE COURT

SUOZZI, J.

The issue to be decided on this appeal is whether it is appropriate to grant class action certification in a suit that challenges the alleged exclusionary zoning ordinance and practices of a municipal government.

We hold that class action certification is inappropriate in such a lawsuit and that the order of Special Term to that effect should be affirmed.

### THE PARTIES AND PLEADINGS

The plaintiffs are comprised of four categories of individuals and three organizations. The individual plaintiffs are low-income residents of Brookhaven who live in overcrowded or otherwise inadequate rented quarters; homeowning Brookhaven taxpayers who allege that the defendants' exclusionary zoning practices deprive them of the opportunity of living in a racially and economically balanced community; a graduate student and his wife, and a graduate student at the Stony Brook campus of the State University who allege that they cannot find adequate housing which is within their economic means; and a nonresident woman who was forced to leave Brookhaven because she could not locate adequate housing for herself and her two children and who now lives on public assistance with them in inadequate housing in Riverhead. The organizations are Suffolk Housing Services, a nonprofit agency established to assist low-income and minority citizens to obtain decent housing in Suffolk County; the Brookhaven Housing Coalition, an association of religious and community organizations which have joined together to work for a racially and economically integrated community; and the Patchogue-Brookhaven Branch of the National Association for the Advancement of Colored People which seeks solutions for the lack of adequate housing for low-income and minority citizens in the Town of Brookhaven. The plaintiffs sued individually and on behalf of all others similarly situated. Specifically, the class for whose benefit the action was brought was further broken down in the second amended complaint to four subclasses as follows: "(a) all low and moderate-income and mi-

nority citizens of the Town of Brookhaven who reside in substandard and inadequate housing in Brookhaven and who are foreclosed from securing decent housing they can afford in the Town because of the zoning practices challenged herein which prevent development of low and moderate-income housing suitable for these plaintiffs; (b) all lower-income students of the State University at Stony Brook who are unable to secure decent housing they can afford near the University because of the Town's illegal and restrictive zoning practices; (c) all low and moderate-income and minority non-residents of Brookhaven compelled to reside in inadequate housing in the larger New York metropolitan area including Long Island because of the defendants' exclusionary zoning practices; and (d) all Brookhaven taxpayers."

In their pleading the plaintiffs argued that despite Brookhaven's population increase of 123% during the decade 1960-1970 the percentage of its Black population was reduced from 3.4% to 2.6% and that 97% of the growth was white; that most of the minority population lives in racial enclaves of deteriorating housing located in North Bellport, Gorden Heights, Patchogue and Center Moriches; that it is town policy to exclude multifamily developments as of right and most of the 60,300 acres of vacant privately owned land is currently zoned for single-family development; that an excessive amount of vacant land is zoned for commercial and industrial uses; that where multifamily housing has been permitted, the town has imposed covenants or obtained the agreement of the developer to limit the number of bedrooms; and that the zoning ordinance requires an additional 1,000 square feet per bedroom where more than one bedroom is proposed in the MF-1 zoning district and an additional 1,000 square feet of site for each additional bedroom in the MF-2 district. According to plaintiffs, all of these restrictions on multifamily housing have had a disproportionately harsh impact on low-income persons, particularly minority groups, who must rent rather than purchase. The plaintiffs further allege that the town has no housing authority, has refused to support privately sponsored Federally subsidized housing and has refused to apply for Federal grants for community development, which policies have precluded town residents and others from obtaining decent housing in the community.

Plaintiffs allege that the town's zoning ordinance and policies violate the United States and the New York State Consti-

tutions, various sections of title 42 of the United States Code and sections 261 and 272-a of the Town Law. The plaintiffs seek (1) a declaration of the invalidity of the zoning ordinance, (2) an order directing defendants to prepare and implement an ordinance and map which would accommodate the housing needs of the plaintiffs and those represented, (3) a permanent injunction enjoining the defendants from engaging in any policies and practices which effectively deny decent and equal housing opportunities "to the plaintiffs and those represented", and (4) all costs incurred in maintaining the action, including attorneys' fees.

### DECISION OF SPECIAL TERM

In denying class action certification to the subject action, Special Term relied on the holdings of the Court of Appeals in *Matter of Rivera v Trimarco* (36 NY2d 747) and *Matter of Jones v Berman* (37 NY2d 42) for the proposition that "where governmental operations are involved, class actions are unnecessary since subsequent plaintiffs will be adequately protected by the principles of *stare decisis.*"

### THE LAW

In support of their argument that class action relief should have been granted in the instant action, the plaintiffs rely on the case of *Ray v Marine Midland Grace Trust Co.* (35 NY2d 147), which was decided in 1974 under former CPLR 1005 (subd [a]), which then governed the availability of class actions and provided: "Where the question is one of a common or general interest of many persons or where the persons who might be made parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all." In upholding class action certification in *Ray (supra),* the Court of Appeals stated:

"Moreover, the very device of the class action was a flexible remedy of equity, which perforce should be applied progressively as equity still develops (see, generally, for a discussion of the availability of equity to prevent multiplicity of suits, 1 Pomeroy Equity Jurisprudence [5th ed; 1941], §§ 243-244). It would be anomalous to regard the statute, progressive in concept, as intended to restrict the scope of equity or to freeze its development. It has, therefore, always remained for the

courts to give meaning to the remedy, based on substantive and developing equitable considerations" *(supra,* p 152).

"Recently, this court observed that 'the restrictive interpretation in the past of CPLR 1005 and its predecessor statutes no longer has the viability it may once have had [citations omitted]' *(Moore v. Metropolitan Life Ins. Co.,* 33 N Y 2d, at p. 313; see, also, generally, the discussion of class actions in *Hall v. Coburn Corp. of Amer.,* 26 N Y 2d 396, 401-402, *supra,* emphasizing that class actions have been favored in relationships growing out of trusts and noting an expansive development in entertaining class actions; see, contra, *Elkind v. Chase Nat. Bank,* 259 App. Div. 661, 665, affd. 284 N. Y. 726). The statute, defining class actions in flexible language, it has always been for the courts to elaborate on its scope and limitations" *(supra,* p 156).

However, and this is most crucial to our analysis herein, the lawsuit in *Ray* was not directed against a government body or agency, but involved the owner of certain debentures who brought an action alleging breach of trust, gross negligence and conflict of interest against Marine Midland Grace Trust Company, the indenture trustee.

Despite the language in *Ray* which indicated that the Court of Appeals was adopting a liberal attitude toward class actions, the court made it very clear in several subsequent decisions that no such approach could be utilized when the attempted class action was directed at a governmental body or agency.

Thus, in *Matter of Rivera v Trimarco* (36 NY2d 747, 749, *supra),* the court stated: "[I]t was an abuse of discretion on the part of the courts below to grant class relief since in the circumstances here presented, governmental operations being involved, *on the granting of any relief to the petitioners comparable relief would adequately flow to others similarly situated under principles of stare decisis."* (Emphasis supplied.)

In *Matter of Jones v Berman* (37 NY2d 42, *supra),* decided in June, 1975, an attack was made on a State regulation which purportedly conflicted with State and Federal statutes regarding the prerequisites necessary to obtain emergency monetary relief. In reversing that part of the order of Special Term which, *inter alia,* had granted class action certification to all those who were denied the emergency relief, the Court of Appeals stated *(supra,* p 57): "There is still another aspect

of the case that merits comment. The availability of class action relief has only recently been the subject of a lengthy exposition which expanded its acceptance in the courts of this State *(Ray v Marine Midland Grace Trust Co.,* 35 NY2d 147). *Without detracting from that opinion, or the modern concept of class actions, in this particular situation, where governmental operations are involved, and where subsequent petitioners will be adequately protected under the principles of stare decisis (Matter of Rivera v Trimarco, 36 NY2d 747), we are of the opinion that class action relief is not necessary.*" (Emphasis supplied.)

On September 1, 1975, CPLR article 9 was enacted and provides the following prerequisites for class action certification in CPLR 901:

"a. One or more members of a class may sue or be sued as representative parties on behalf of all if:

"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. the representative parties will fairly and adequately protect the interests of the class; and

"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

However, the enactment of the new statute governing class actions did not overrule *Rivera* and *Jones.*

In *Matter of Martin v Lavine* (39 NY2d 72, 75), decided in March, 1976, the Court of Appeals reiterated its approach to class actions where governmental operations were involved by stating: "[W]e think that there is no compelling need to grant class action relief in this case in light of the enormity of the administrative problem which would be posed in implementing this decision and the fact that future petitioners may rely upon our determination herein. As we recently noted, '[t]he availability of class action relief has only recently been the subject of a lengthy exposition which expanded its acceptance in the courts of this State *(Ray v Marine Midland Grace Trust Co.,* 35 NY2d 147). Without detracting from that opinion, or the modern concept of class actions, in this particular situa-

tion, where governmental operations are involved, and where subsequent petitioners will be adequately protected under the principles of *stare decisis (Matter of Rivera v Trimarco,* 36 NY2d 747), we are of the opinion that class action relief is not necessary' *(Matter of Jones v Berman,* 37 NY2d 42, 57)."

Although the attempted class action in *Martin (supra)* was brought prior to September 1, 1975, it is clear that the holdings of *Rivera* and *Jones* are also applicable to class actions brought against governmental agencies after September 1, 1975 and governed by CPLR article 9. In *Matter of Beekman-Downtown Hosp. v Whelan* (88 Misc 2d 324, 326-327, revd on other grounds 57 AD2d 1, revd 44 NY2d 124), Special Term (New York County) stated: "Class-action procedure is neither appropriate nor necessary. These are article 78 proceedings seeking orders annulling and setting aside the certification and approval by the superintendent and commissioner of Blue Cross' rates of payment to hospitals in 1974 and directing that said respondents require Blue Cross to recompute such rates. The Court of Appeals has recently twice held that class actions in cases where governmental operations are involved are not necessary since comparable relief would adequately flow to others similarly situated under principles of *stare decisis. (Matter of Rivera v Trimarco,* 36 NY2d 747; *Matter of Jones v Berman,* 37 NY2d 42.) Although both of these cases were decided prior to the enactment of CPLR article 9, the new class-action statute, effective September 1, 1975, that statute does not overrule these cases. Their rationale is equally applicable to the new statute as it was to CPLR 1005, the now repealed class-action statute. Nothing in the legislative history or the language of the new statute reflects such an intention."

It is clear from the holdings of all of these afore-noted cases that by virtue of the principle of *stare decisis,* purported class actions against governmental bodies and agencies do not normally satisfy the fifth requirement of the statute governing class actions, i.e., "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (CPLR 901, subd a, par 5.)

The instant action clearly reflects this principle. In the case at bar, the legality of the town's zoning ordinance is the crucial issue to be resolved. A declaration that the zoning ordinance and practices of the town are illegal would be binding upon the town and would automatically benefit all

persons in the classes claimed to be represented regardless of whether they are made plaintiffs in this action through the vehicle of a class action. To allow a class action in the case at bar would signal an open-ended invitation to the initiation of class actions against governmental bodies or agencies, for no valid or practical purpose other than the recovery of attorneys' fees from the particular governmental body or agency. Indeed, in the case at bar, the only tangible adverse effect which plaintiffs claim will result from a denial of class action certification is that the low-income plaintiffs will be deprived of an opportunity to recover attorneys' fees pursuant to CPLR 909, which provides: "If a judgment in an action maintained as a class action is rendered in favor of the class, the court in its discretion may award attorneys' fees to the representatives of the class based on the reasonable value of legal services rendered and if justice requires, allow recovery of the amount awarded from the opponent of the class." However, the mere loss of an opportunity to recover attorneys' fees is not a sufficient ground to allow class action certification against a governmental body or agency.

In enacting CPLR 909, the Legislature clearly indicated that attorneys' fees were to be awarded (1) in the discretion of the court and (2) in actions that satisfied all the requirements of CPLR 901 regarding class actions and which were properly designated as class actions. It was never the intention of the Legislature that class action certification be awarded solely for the purpose of affording the plaintiffs the opportunity to recover attorneys' fees from the adversary of the class, in this case, the Town of Brookhaven.

I am aware of the fact that this court in the recent case of *Ammon v Suffolk County* (67 AD2d 959), affirmed the granting of class action certification. However, that case is significantly distinguishable from the case at bar.

In *Ammon* the plaintiffs, who were master plumbers licensed by the Suffolk County Department of Consumer Affairs, challenged by way of a class action so much of a license fee in excess of $35 as unreasonable, excessive and violative of their constitutional rights. In addition, plaintiffs therein sought an injunction against the collection of the $100 annual fee *in futuro* and a refund of the excess money collected. Although it was not disputed that the first four prerequisites of a class action outlined in CPLR 901 (subd a, pars 1-4) were satisfied, the county, in opposing class action certification,

argued that the fifth requirement of the statute had not been met, i.e., that a class action would be "superior to other available methods for the fair and efficient adjudication of the controversy" (CPLR 901, subd a, par 5). Specifically, the county argued that where governmental operations are involved, a class action is unnecessary, since *stare decisis* will afford adequate protection to present and future members of the proposed class.

In rejecting this argument and granting class action certification, this court stressed the fact that the plaintiffs were seeking monetary relief and that victory for the individual plaintiffs in the absence of class action certification would result in numerous subsequent actions by others for identical relief with the consequent delay and expense. Specifically, this court in *Ammon (supra,* p 960) stated: "Under the circumstances of the instant case, where we are dealing with a large, readily definable class seeking, *inter alia,* money damages, and where the questions of law and fact are virtually identical as to each member of the class, it is our opinion that maintenance of a class action is the superior method of adjudication. It is notable in this regard that the case at bar is distinguishable from *Matter of Rivera v Trimarco (supra)* and the other cases cited above in that we are dealing here with a readily definable class whose members are seeking not only a declaration of invalidity and a permanent injunction, but also monetary relief in the form of a refund of any 'excess' fees which may have been collected from them since January, 1972. As a result, victory for the individual plaintiffs in the absence of class relief will only result in a plethora of actions being brought for identical relief, with the consequent delay and added expense associated with multiple actions (see *Beekman v City of New York,* 65 AD2d 317). Moreover, in view of the small sums which individual plaintiffs would be entitled to recover (according to the complaint, a maximum of $65 per year for a maximum of seven or eight years), it is plausible, if not probable, that many potential plaintiffs entitled to less than the maximum recovery will have to forego bringing suit, or will find the prospects of individual litigation economically unappealing. As to these plaintiffs, it can scarcely be argued that their rights 'will be adequately protected under the principles of *stare decisis' (Matter of Jones v Berman,* 37 NY2d 42, 57, *supra)."*

The case at bar stands in marked contrast to *Ammon* since

a declaration in favor of the individual plaintiffs invalidating the zoning ordinance of the Town of Brookhaven will not lead to a "plethora of actions * * * for identical relief", but will immediately trigger a rezoning by the town which will benefit all the members of the purported class.*

Finally, in their brief, plaintiffs alleged that the "shifting housing situations of the individual plaintiffs" necessitate class action certification. According to plaintiffs: "As a general matter the housing status of lower income persons is in a constant state of flux and the plaintiffs here present no exception. In protracted cases this shifting necessitates repeated substitution of parties in order to avoid possible issues of mootness."

This contention is without merit. Plaintiffs' argument that all of the 14 individual plaintiffs will find better housing and withdraw from the suit is speculative at best and totally ignores the fact that the three organizational plaintiffs are clearly committed to pursuing this matter to its conclusion.

Accordingly, the order denying plaintiffs' motion for class action certification should be affirmed.

MARGETT, J. (dissenting). The sole issue in this case is whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy" (see CPLR 901, subd a, par 5). My brother Justice SUOZZI has given a fair and impartial overview of the facts of this case. I would add to that, however, the allegations made by some of the individual plaintiffs.

John and Kathleen Smith are, according to the second amended complaint which appears in the appendix on appeal, white residents of the Town of Brookhaven, residing in Patchogue. The Smiths have six children. Mr. Smith is unemployed and receives public assistance. Because of their low

---

* I am aware of the fact that there is presently pending in the Legislature an amendment (Assembly Bill A 388; Senate Bill S 362) to CPLR article 9 which provides:

"Section 1. Section nine hundred one of the civil practice law and rules is amended by adding a new subdivision c to read as follows:

"c. It shall not be grounds for denial of class relief that the action or proceeding in which such relief is requested is against a governmental body or officer."

Since this proposed amendment to CPLR 901 has not as yet been enacted by the Legislature and signed into law, it is unnecessary to determine what effect it might have on any attempted class action which challenges a municipality's zoning ordinance and practices as exclusionary.

income, the Smiths must rent their housing. The only rental units in Brookhaven large enough to meet the Smiths' needs are individual homes, but house rentals in the town are usually on a temporary basis prior to the sale of the unit by the owner. The said complaint alleges that the Smiths therefore "stand in jeopardy of being forced to locate alternative housing as they have been compelled to do on four separate occasions since 1970." Ironically, an affidavit in support of plaintiffs' motion to maintain a class action, states that the Smith family now resides at Wading River in the Town of Southampton. The affidavit alleges that "Brookhaven's lack of decent, lower cost housing opportunities has now resulted in the Smiths being forced into housing outside of Brookhaven."

As to another of the plaintiffs, Ingrid Evans, the second amended complaint alleges that she had lived with her two children in a deteriorated structure in the Eastport section of Brookhaven. She was forced to leave that residence but was unable to locate decent housing she could afford in Brookhaven. Thus, she moved into her sister's apartment in a "deteriorating 'welfare' complex" in Riverhead. It is alleged that this Black former resident "seeks to move back to Brookhaven" from the "overcrowded" apartment in which she now finds herself, but that she "has been and continues to be unable to find suitable decent housing she could afford in the Town." The afore-mentioned affidavit in support of plaintiffs' motion to maintain a class action, states that plaintiff Evans has subsequently managed to secure housing in Brookhaven, but that "[i]n order for [her] to secure a decent housing unit for herself and her two children * * * she is forced to pay a higher rent than she can afford."

Margaret Melendez is a white low-income resident of Brookhaven receiving public assistance, who lives with her seven children in Patchogue. Since 1972 plaintiff Melendez has been forced to relocate on five separate occasions and the second amended complaint alleges that "the home she currently is renting has been put up for sale by the owner." The affidavit in support of plaintiffs' motion to maintain a class action indicates that plaintiff Melendez is now living in Port Jefferson Station. It states that she was "recently notified that the housing she lives in has been the subject of a V.A. foreclosure action and she must therefore vacate the premises."

Kyger C. Lohman, a white graduate student at Stony Brook University, and Gayle Lohman, a nursery school teacher,

reside in Setauket, in the Town of Brookhaven. Due to their low income the Lohmans have been compelled to reside in a group situation with three other parties in a house. The second amended complaint alleges that the Lohmans are unable to find affordable alternative housing in the vicinity of Stony Brook University.

Terrance Bostwick is a Black graduate student at Stony Brook University. Because of repeated unsuccessful efforts to locate affordable housing in the area of the university, plaintiff Bostwick "has been forced to reside temporarily in his office at Stony Brook."

The affidavit in support of plaintiffs' motion to maintain a class action states that both the Lohmans and Mr. Bostwick have, since the original filing of the complaint, graduated and moved from the area. The affidavit states, however, that the defendants have agreed to stipulate to a substitution of current Stony Brook students who have been unable to secure decent and adequate housing near the university.

Although there are other plaintiffs in this case, the allegations and the migrations of these seven individuals are recounted above since they are illustrative of the need for maintenance of a class action. While the organizational plaintiffs are, presumably, bona fide and very competent representatives of the people who are allegedly injured by Brookhaven's zoning policies, the presence of the individual plaintiffs serves to impart an element of specificity, immediacy, and direct human need into what might otherwise be viewed as an academic exercise in theoretical swordplay. Theirs is an intimate stake in the resolution of the lawsuit, one which is truly reflective of the class they seek to represent. It cannot be gainsaid that the individual plaintiffs have every right to join the organizational plaintiffs in this suit, nor that their withdrawal would tend to depersonalize what is ultimately a very human conflict.

There is no disagreement among the parties, nor among the members of this court, that plaintiffs have satisfied the first four of the five criteria set forth in CPLR 901 (subd a). Those prerequisites to maintenance of a class action are:

"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

"2. there are questions of law or fact common to the class which predominate over any question affecting only individual members;

"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. the representative parties will fairly and adequately protect the interests of the class; and

"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (CPLR 901, subd a.)

There is divergence of opinion, however, over whether the fifth, and last, of those statutory standards has been met—to wit, whether "a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

The majority of this court has construed the language of the statute narrowly, holding in effect that a successful attack on the town's zoning ordinance and practices by *any one* of the named plaintiffs would, by reason of *stare decisis,* "automatically benefit all persons in the classes claimed to be represented regardless of whether they are made plaintiffs in this action through the vehicle of a class action." It is said that the danger of withdrawals from the suit by individual plaintiffs is "speculative at best" and that "the three organizational plaintiffs are clearly committed to pursuing this matter to its conclusion" anyhow. Finally, it is argued that the possibility of obtaining attorneys' fees, available at the court's discretion in a class action (CPLR 909), should not even be considered in deciding whether the maintenance of a class action would be a superior method of adjudication.

I would read the statute more broadly. Given the fact that there *are* individual plaintiffs in this action, which draws breath and soul from their presence, I believe a key consideration in this case is the mobility which is inevitable in a proceeding as drawn out as this one. The action was commenced more than three years ago, in November, 1975. Because of motions to dismiss, prior appeals, etc., an answer was only recently interposed. As the discussion above concerning seven of the individual plaintiffs shows, people simply do not anchor themselves to one place—particularly when they are living in substandard housing or are obliged to house a large family on a small income. If the injustice these plaintiffs allege really does exist, that very injustice serves to disturb the residential stability necessary to overcome it.

The four subclasses of plaintiffs are detailed in the opinion of the majority. The continued viability of at least two of these

subclasses—the nonresidents of Brookhaven who are compelled to reside in inadequate housing outside of the town and the Stony Brook University students—is somewhat fragile because of the problem of standing. Fortuitously for the plaintiffs, John and Kathleen Smith moved out of Brookhaven during the period of time that Ingrid Evans (the sole nonresident plaintiff in the second amended complaint who was found by the courts to have standing) moved back in. Had the only move been that of plaintiff Evans, defendants could have moved for a dismissal of the "nonresidents" cause of action. Likewise, the difficulty in maintaining the "Stony Brook" subclass should be obvious. Although defendants did stipulate to a substitution of present Stony Brook students for the Lohmans and Mr. Bostwick, the tenuous nature of that subclass should not be masked by defendants' current largess.

Nor is the subclass of "all low and moderate-income and minority citizens of the Town * * * who reside in substandard and inadequate housing", an unassailable entity. Appellants' brief indicates that "[s]everal of the individual low income plaintiffs have, in fact, temporarily improved their housing situations * * * Indeed, not one of the individual low income plaintiffs found to have standing in this case is currently residing in the housing unit [he] lived in when the complaint was originally served. In most instances, the plaintiffs have lived in three to four different locations since this action was undertaken."

These facts contradict the majority's assessment that future housing shifts by the individual plaintiffs are "speculative". Maintenance of this action in a class form would insure that the claims of the various subclasses would not be mooted, since "the class of unnamed persons * * * [will have] acquired a legal status separate from the interest[s] asserted by [the individual plaintiffs]" (see Sosna v Iowa, 419 US 393, 399). In interpreting the Federal rule which formed the pattern for the enactment of CPLR 901 (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.03), the courts have considered it "dispositive" on the question of "superiority" that the action would go no further without class suit designation (see Korn v Franchard Corp., 456 F2d 1206).

It is no answer that defendants have allowed liberal substitution of parties. Aside from the fact that defendants' tolerant attitude is subject to change at any moment (and, for tactical reasons, such a change might be expected as soon as the "class

action" issue is finally determined in their favor), the constant substitution of parties can hardly be defended as a more "efficient" method for the adjudication of the controversy (see CPLR 901, subd a, par 5).

Nor is it decisive that the organizational plaintiffs are "committed to pursuing this matter to its conclusion." None of the organizations allege injury to themselves as organizations, and therefore their standing derives solely from their representation of "members who have been injured in fact, and thus could have brought suit in their own right" (see *Simon v Eastern Ky. Welfare Rights Organization,* 426 US 26, 40). Significantly, the town has not heretofore challenged the standing of either Suffolk Housing Services or the Brookhaven Housing Coalition. In substantially denying a prior motion to dismiss the complaint, Special Term described "their standing [as] questionable" *(Suffolk Housing Servs. v Town of Brookhaven,* 91 Misc 2d 80, 92, mod 63 AD2d 731). The third organizational plaintiff, the Patchogue-Brookhaven Branch of the NAACP, was found to have standing on the ground that the second and fourth causes of action claimed discrimination against minority group persons.

In the event the individual plaintiffs' claims were to be mooted by reason of residential shifts, it is not inconceivable that the town would mount an attack on Suffolk Housing Services and the Brookhaven Housing Coalition on the basis of lack of standing. Were they successful, it appears that all subclasses except that composed of Brookhaven homeowner taxpayers, who allege that they have been "deprived of the opportunity of living in a racially * * * balanced community," would be nonsuited. The possibility exists that this suit could be reduced from its present form to one based solely on alleged racial discrimination. That is obviously not the main thrust of the instant action, and it is apparent that the ability of these individual plaintiffs to "remain" in this suit is important not only from a moral or tactical standpoint, but for technical legal reasons as well.

The *possibility* that these plaintiffs may be entitled to attorneys' fees in the event they can maintain this as a class action is also to be taken into account in assessing the superiority of the class form. "[T]he traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization" *(Hall v Cole,* 412 US 1, 4; 20 Am Jur 2d, Costs, § 72; 22 Am Jur 2d,

Damages, § 165). New York law is in accord with the so-called "American" rule (3 NY Jur, Attorney and Client, § 83).

One such statutory authorization for an award of attorneys' fees is contained in CPLR 909. That section provides that "[i]f a judgment in an action maintained as a class action is rendered in favor of the class, the court in its discretion may award attorneys' fees to the representatives of the class based on the reasonable value of legal services rendered and if justice requires, allow recovery of the amount awarded from the opponent of the class." The purpose of this section is to provide access to the courts in a proper case for persons who could not otherwise feasibly bring individual actions.

"In many class action situations, involving such claims as those of consumers, persons damaged by violation of environmental protection statutes or to enforce various regulatory provisions, the interest of each member of the class may be miniscule in comparison to the size of the controversy and to the legal time and effort which would be involved. No one of these class members could feasibly bring an individual action since the legal fees might exceed the amount of the individual claims and most competent attorneys would be unwilling to handle such a small case. Thus it may be that the only way that the wrongs to these persons can be remedied is through a class action. To provide the incentive to competent and experienced attorneys to handle the complex problems which are inherent in class actions and to assure forceful prosecution of such actions, it is essential that the court have power to award appropriate counsel fees. Since it would be unreasonable to require the representative parties to pay the fees, for the same reasons that an individual suit is unfeasible, the most just and reasonable solution is to award the payment of fees out of the fund created for the benefit of the class and thus spread the litigation expenses among those who stand to benefit from the judgment" (2 Weinstein-Korn-Miller, NY Civ Prac, par 909.01). Where there is no fund the court may, in the interest of justice, allow recovery of the amount awarded from the opponent of the class (2 Weinstein-Korn-Miller, NY Civ Prac, par 909.02).

The purpose of CPLR 909 dovetails with one of the main criteria employed by the courts in assessing whether a class action would be superior to other methods of adjudication. Maintenance of a class action will be considered "superior to other available methods for the fair and efficient adjudication

of the controversy" where "[t]he individual members of the proposed classes have little interest in pressing their relatively small claims in the absence of a class action and it is unlikely these claims could be vindicated in any other manner" *(Matter of Antibiotic Antitrust Actions,* 333 F Supp 267, 271). That is precisely the case at bar. It is doubtful whether these individual plaintiffs would have pressed their claims without the class action form with its attendant possibilities for recovery of attorneys' fees.

The majority's fear, that "[t]o allow a class action in the case at bar would signal an open-ended invitation to the initiation of class actions against governmental bodies * * * for no valid * * * purpose other than the recovery of attorneys' fees", perceives a baseless spectre. All of the aforementioned five criteria for class action maintenance must be sustained. A spurious action would likely founder well before reaching consideration of the "superiority" requirement here at issue. Not surprisingly, the Federal courts "have generally held that if all other prerequisites have been satisfied, then the class action is the most effective means of proceeding" (2 Weinstein-Korn-Miller, NY Civ Prac, par 901.11; see, e.g., *Elkind v Liggett & Myers,* 66 FRD 36). Furthermore, the courts can surely be entrusted to soundly exercise the discretionary power given them by the statute. Only where "justice requires" will attorneys' fees be awarded by the courts (CPLR 909).

The majority opinion properly recognizes that there is no per se rule proscribing the maintenance of class actions against governmental bodies (see, also, *Ammon v Suffolk County,* 67 AD2d 959; *Beekman v City of New York,* 65 AD2d 317). It would, however, construe the "superiority" requirement in CPLR 901 (subd a, par 5) in a very narrow way; one which looks only to the potential end result of the litigation. I would look to the course of the litigation itself, and hold that both a fairer and more efficient adjudication of this controversy would be had through maintenance of a class action. This is especially so because of the presence of the individual plaintiffs, the fundamental grievants against the town.

Accordingly, I would reverse Special Term and grant plaintiffs' motion for an order maintaining the action as a class action.

COHALAN and MARTUSCELLO, JJ., concur with SUOZZI, J.; MARGETT, J., dissents and votes to reverse the order and grant

class action certification, with an opinion, in which HOPKINS, J. P., concurs.

Order of the Supreme Court, Suffolk County, dated October 12, 1978, affirmed, without costs or disbursements.